## JACKSON v. JACKSON.

No. 7793.   Decided January 15, 1953.   (252 P. 2d 214.)

See 37 C. J. S., Frauds, Statute of, sec. 176. Pleadings in Court as constituting writing within statute of frauds. 49 Am. Jur., Statute of frauds, sec. 327; 32 A. L. R. 735.

*Knox Patterson* and *O. A. Tangren,* Salt Lake City, for appellant.

*Henry Ruggeri,* Price, *Mitchell Melich,* Moab, *Ruggeri & Gibson,* Price, for respondent.

CROCKETT, Justice.

This case concerns an alleged oral promise to make a will. Lillian Jackson, plaintiff, claims that at the time she entered into a written property settlement agreement with and divorced John Jackson in 1919, he promised to bequeath $3,500 to each of their seven children. When he died in 1949, his will did not so provide. She sues his estate in behalf of the children to enforce this oral contract. The trial court resolved the issues against her. Her appeal is based mainly upon rulings excluding her proffered evidence, a discussion of which requires a factual background.

Apparently the Jacksons had been experiencing marital difficulties for some time before their divorce. According to Lillian Jackson, a divorce proceeding was started in Utah in 1918, but because the parties were unable to agree on the terms of settlement the suit was abandoned. After negotiations for some considerable period of time, both in Utah and California, a property settlement was agreed upon and executed in California, and a divorce was granted to Lillian Jackson in December, 1919, by a California court. The agreement is made part of the pleadings. It is quite extensive in scope, dealing with the marital status and responsibilities, children's custody, support and maintenance, and the properties accumulated by the parties. On 7 legal-size typewritten pages, it sets out 18 separate items and

parcels of property, 13 of which went to Lillian Jackson and the other 5 going to John Jackson, which division allocated the properties substantially 50-50 between them, approximately $24,000 in value to each. It also provided that plaintiff would have the custody of the children, would raise and support them at her own expense, and expressly set out that the agreement was fair and equitable and that she:

"* * * agrees not to make any demands for the support, aid or succor for herself or minor children * * *."

It is plaintiff's contention that she was unwilling for a long time to enter into this agreement but that her husband finally induced her to do so by orally promising to make a will bequeathing each child $3,500 upon his death, and that at the same time he gave her a Woodmen of the World insurance certificate in the sum of $1,000, the proceeds of which were to go one-fourth to each of the four daughters.

In September, 1920, after the divorce, John Jackson came back to Utah, where the family had previously resided, and had Knox Patterson, who at times had been attorney for both Jackson and his wife, prepare a will which did in fact bequeath to each of the boys the sum of $3,500 and to each of the girls the sum of $3,250. A new Woodmen's certificate was issued changing the beneficiary from Lillian Jackson to make the daughters beneficiaries to the extent of $250 each.

Subsequently Jackson married Sinda Jackson and eventually begat six more children. In 1946, he made the will now probated, leaving each of the living children of the first marriage $1,000 (instead of the $3,500), the balance to go to Sinda and their children. The insurance certificate was changed to make his second wife (Sinda) beneficiary; she was also named executrix of the estate.

Lillian Jackson presented a claim to the executrix on behalf of her seven children for the sum of $3,500 for each,

a total of $24,500, contending that the estate was bound by the alleged oral agreement to bequeath such sums to them.

At the trial the plaintiff relied principally on her own testimony and that of her attorney, Knox Patterson. Objections were sustained as to both, which is the gravamen of this appeal.

Plaintiff offered to testify that she refused to sign the property settlement because it divided the property equally, but left her to rear the children out of her share; that, after considerable negotiation and delay, decedent told her that if she would so agree and sign he would make a will bequeathing $3,500 to each of the children; that in reliance thereon she agreed to and signed the settlement; further, that as part performance of the agreement Jackson then gave her the $1,000 Woodmen of the World insurance certificate.

The proffer of testimony of the attorney, Knox Patterson, was that he would relate conversations had with John Jackson during the divorce negotiations in Utah between the parties; that they brought him an inventory of their property to divide equally; that he would have corroborated Lillian Jackson's refusal to agree to any equal property division so long as she had the burden of maintaining the children; that John Jackson came to him after the California divorce had been granted in 1920 to have a will drawn bequeathing $3,500 to each of the children with the modification that each of the four girls would only get $3,250 because of the $250 interest each had in the Woodmen's insurance certificate; that Jackson told him the will was being made pursuant to agreement with Lillian as part of the marriage settlement; that when Patterson asked as to why these terms had not been put in the agreement, Jackson said he wasn't going to do anything about it until after the divorce.

The foregoing evidence was objected to on these grounds:

1. That the California statute of frauds prevents proof of an oral agreement to bequeath property.

2. That it is an attempt to vary by parol the terms of the written property settlement agreement.

3. That Lillian Jackson was an interested party asserting a claim adverse to the estate and therefore incompetent to testify under the "dead man's statute."[1]

4. That Patterson was acting as attorney for Jackson and was thus incompetent to testify.[2]

The trial court sustained the objections; if any of the grounds stated are good, the ruling must be affirmed.

Plaintiff proved the California statute of frauds by properly calling the court's attention thereto as provided in Rule 44(f), U. R. C. P. If such law is substantive, it would make invalid the alleged contract because, if made, it was entered into in California. Sec. 1973, Cal. Code of Civil Procedure, provides:

"In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged * * *. *Evidence,* therefore, of the agreement, *cannot be received* without the writing or secondary evidence of its contents:

   *   *   *   *   *

"6. * * * an agreement to devise or bequeath any property, or to make any provision for any person by will". (Emphasis added.)

The language of the statute just quoted seems procedural, but significantly different is Sec. 1624, [1,2] Civil Code of California:

"The following contracts are invalid, unless * * * in writing and subscribed * * *:

---

[1] 78-24-2(3), U. C. A. 1953.
[2] 78-24-8(2), U. C. A. 1953.

\* \* \* \* \*

"6. \* \* \* an agreement to devise or bequeath any property, or to make any provision for any person by will."

There being no expression limiting the latter section merely to the *exclusion of evidence,* it appears to be substantive. Numerous cases affirm that under the foregoing statute an oral contract to make a will will not be enforced.[3] Although the matter is not entirely without doubt[4] the better view appears to be that such statutes should be regarded as substantive.[5] Accordingly we proceed to examine the writings here involved to determine their sufficiency to meet the statute of frauds.

The only such writings in this case, signed by decedent, are (1) the property settlement agreement and (2) the will which decedent had Knox Patterson draw for him (the first will).

Obviously the property settlement agreement is not a memorandum of any agreement to make a will. It contains no reference thereto. On the contrary, it is in direct conflict with the terms of the oral agreement contended for: as hereinabove mentioned, it sets out quite extensively all matters relating to the custody of the children, the rights and obligations of the parties and their properties, and purports to fully settle them in consideration of their mutual promises and the property received in the settlement. The oral agreement would conflict by requiring decedent to give something more than did the terms of the written agreement.

Likewise, the first will itself cannot be regarded as a

---

[3]*Giles* v. *Reed,* 44 Cal. App. 367, 186 P. 614; *Bogan* v. *Wiley,* 72 Cal. App. 2d 533, 164 P. 2d 912; *O'Brien* v. *O'Brien,* 197 Cal. 577, 579, 241 P. 860; *DeMattos* v. *McGovern,* 25 Cal. App. 2d 429, 77 P. 2d 522.

[4]*Durbin* v. *Hillman,* 50 Cal. App. 377, 195 P. 274; *O'Brien* v. *O'Brien,* supra.

[5]11 Am. Jur., Conflicts of Laws, Sec. 200, p. 518.

memorandum of the oral agreement, since it recited nothing whatsoever about it, either as to its terms or existence. It is true that the terms of that will are consistent with the oral agreement plaintiff contends for. However, these recitals therein are equally consistent with the non-existence of an oral agreement, and thus cannot be said to be a memorandum of such agreement.[6] Nor is the execution of the will part performance of the alleged oral agreement so as to satisfy the statute of frauds.[7]

The making of the will favoring his children is well within the normal actions of a divorced parent who was concerned with the welfare of his minor children and does not necessarily give rise to an inference that he did so because he was bound by an oral promise so to do. Likewise, it may be said that 26 years later, in 1946, after that family's members were all grown, it would not be unnatural for him to revoke that will and make a new one, reducing the bequest to the former family and devising the bulk of the estate to his second wife and younger children. Neither the property settlement agreement, nor the first will, considered alone or in combination, represent any unequivocal act which would indicate they were drawn pursuant to an oral agreement, and therefore they do not help plaintiff satisfy the statute of frauds of California where the contract was supposed to have been made, which expressly declares such promises to be unenforceable. That ground effectively supports the trial court's rulings on the proffered evidence. Therefore, in the interest of brevity, we deem it inadvisable to discuss the other bases of objection to it.

It should be observed that the Utah statute of frauds contains no reference to leaving property by will as does

---

[6]See *Brooks* v. *Whitman*, 122 Cal. App. 660, 10 P. 2d 1007; *Luders* v. *Security Trust & Savings Bank*, 121 Cal. App. 408, 9 P. 2d 271.

[7]*Baker* v. *Bouchard*, 122 Cal. App. 708, 10 P. 2d 468; *O'Brien* v. *O'Brien*, supra.

that of California.[8] The question whether an oral promise to make a will would be enforceable under Utah law is not presented here.

Appellant also asserts that there was part performance which would satisfy the statute of frauds: first, because Jackson gave here the original Woodmen's insurance certificate; and second, because she raised the children without further financial assistance from him.

Assuming Jackson had given it to her, the possession of the Woodmen's insurance certificate by plaintiff does not indicate part performance by her nor any act done by her in reliance on his promise which would permit her to invoke the part performance rule. The plaintiff herself introduced evidence that John Jackson had filed an affidavit that this certificate was lost, and had secured a new one made out to the four daughters as beneficiaries. This in itself tends to indicate contrary to plaintiff's contention. If there had been any such oral agreement, the parties undoubtedly would have been very cooperative about the original certificate and she would have given it to John Jackson for the purpose of having the change of beneficiaries made. The evidence is susceptible of a reasonable interpretation which accords with the trial court's finding that the plaintiff retained the original certificate and that John Jackson did not give it to her.

With respect to the rearing of the children: it may well be that, absent the written property settlement agreement, if she had performed her part of such an oral contract by raising the children, she could have maintained the action and the defendant would have been estopped to raise the defense of the statute of frauds. But the rearing of the children was the very thing which she agreed in the property settlement to do and for which she received the consideration mentioned in it. Having

[8]See Sec. 25-5-4, U. C. A. 1953.

been so bound to perform, she cannot claim that this was "a part performance" of another separate and distinct oral contract claimed by her.

The trial court found that she failed to prove the alleged oral contract. We cannot say that such finding was unreasonable.

Judgment affirmed. Costs to respondent.

McDONOUGH, HENRIOD and WADE, JJ., concur.

WOLFE, Chief Justice (concurring in the results).

I concur in the result on the ground that the offering of the testimony excluded by the court was an attempt to vary by parol evidence the terms of the written property settlement agreement executed by the parties. On page 2 of that agreement it is provided:

"It being the intention of these presents and the contract hereinby entered into and the consideration herein specified that the said party of the first part [the appellant] shall and will not make any further demand of property division or interests in any proceeding at law or otherwise, growing out of or by reason of any action of divorce, said first party may institute and prosecute. And the property division hereinafter specified is and shall be in full settlement as complete adjustment of any claim or right whatsoever, either legally or morally said first party shall or may have upon said second party [the decedent], or upon any of his property, as well as any claim or right, legally or morally that the children above mentioned shall or may have therein save and excepting as hereinafter specified."

It is clear, in view of the above provision, that the parties intended the written agreement to be a complete integration of their previous negotiations and oral understandings in regard to the division of property. The alleged oral promise of the decedent to bequeath $3,500 to each of his children is inconsistent with the integrated contract and is not a matter which might be naturally made the subject of a separate agreement. Corbin on Contracts, § 584; Restatement of Contracts, § 240(1).

There being a complete integration in writing, the offered testimony of the appellant and Knox Patterson as to the decedent's alleged promise to bequeath $3,500 to each of his children was immaterial and properly excluded from evidence by the trial court. See Corbin on Contracts, §§ 578, 581-583; Williston on Contracts, § 633. The Jackson children, although not parties to the integrated agreement, cannot avoid the effect of the parol evidence rule since it applies to third parties as well, Corbin, § 596. This situation does not involve the matter of the children's support by the father nor his duty to do so, nor the payments for necessaries for the family incurred by the wife. It involves an alleged promise to leave a legacy which a third party beneficiary is attempting to enforce.

My concurrence in the result on the above ground is not to be understood as a disbelief in the validity of the ground relied upon in the prevailing opinion, viz. that the California statute of frauds prevents proof by the appellant of the alleged oral agreement to bequeath property. It is only that I think the above ground is basic and eliminates entirely any necessity for considering the ground discussed and relied upon in the prevailing opinion.