449 P.2d 989

**CHEVRON OIL COMPANY, doing business as Standard Oil Company of California, Plaintiff,**

v.

**BEAVER COUNTY, a legislative corporation of the State of Utah, Hyrum L. Lee, Eugene H. Mayer, Howard J. Pryor, constituting the Board of Commissioners of Beaver County, Defendants and Respondents.**

**PHILLIPS PETROLEUM COMPANY, a Delaware corporation, et al., Plaintiffs and Appellants,**

v.

**BEAVER COUNTY, a legislative corporation of the State of Utah, et al., Defendants and Respondents.**

**Nos. 11317, 11318.**

Supreme Court of Utah.

Jan. 29, 1969.

Van Cott, Bagley, Cornwall & McCarthy, Grant H. Bagley and Leonard J. Lewis, Salt Lake City, for appellant, Chevron Oil Co.

McKay & Burton, Macoy A. McMurray, Verden E. Bettilyon, Salt Lake City, for appellant, Phillips Petroleum Co.

John O. Christiansen, County Atty., Beaver, A. M. Ferro, Salt Lake City, for respondents.

**144**

ELLETT, Justice:

In 1959 the north end of Beaver County was properly zoned as a grazing area. Since then, freeways have been constructed through that area, I–15 running north and south and I–70 running easterly from I–15. Near the northern end of the county there are off and on ramps for the facilitation of those motorists who may wish to change their direction or leave the freeways. The plaintiffs, with foresight, purchased all of the land abutting on the ramps with the hopes of converting grazing land worth twenty or thirty dollars per acre into highway service land worth $10,000 per acre. The thing which stands between the plaintiffs and their hoped-for profit and which prompted these lawsuits is the fact that the land is still zoned as a grazing area.

Two separate suits were brought by plaintiffs alleging that the zoning ordinance of 1959 is unreasonable, capricious, discriminatory, oppressive, illegal, and void, etc. The cases were consolidated for trial, and from adverse judgments the plaintiffs have separately appealed. However, since the problems involved are identical in the two cases, the two appeals were consolidated for argument.

To appreciate the basis for the zones as created by the ordinance, one must know that Beaver County contains 2,584 square miles and is sparsely settled, having a population of only 4,235 distributed into three small incorporated towns and approximately 500 people living on farms scattered throughout the county.

The interstate freeways do not go near two of the incorporated towns, but I–15 does skirt the city of Beaver some 20 miles to the south of the land in question. This town is the seat of county government and maintains municipal facilities including schools and a fire department. There are motels, cafes, and service stations as well as stores located therein, and a good part of the economy of the town is concerned with the tourist trade.

The defendant Beaver County justifies its failure to rezone the land now owned by plaintiffs on the ground that any tourist business which would go to the isolated junction area would be a loss to the established businesses of Beaver City. It further argues that Beaver County would be required to furnish police protection to the proposed new area and to transport school children who might live there to the established schools in Beaver County. It also claims that any earnings and profits which might be engendered by the new establishment would tend to drain away into other towns of comparable size to Beaver which lie in adjoining counties to the east and north. Thus, the county says that the county commissioners are charged with the duty to fur-

ther the interests of its local citizens and that there is no need to zone an area at the extreme edge of the county so as to permit the development contemplated by the plaintiffs.

Whether we agree with the wisdom of the county commissioners or do not agree with it is of no importance. The matter is to be decided by a legislative body (the county commission), and the courts do not ordinarily interfere in such matters. However, should a board enact an ordinance which deprives a person of his property, and where it is clear that the board has acted arbitrarily, capriciously, or in a discriminating manner, the courts will grant redress.

This court had a similar matter before it in Dowse v. Salt Lake City Corporation, et al., 123 Utah 107, 255 P.2d 723 (1953). There, the owner of land in a residential district brought an action to compel the city authorities to rezone his property from *residential* to *commercial.* The trial court dismissed the action on the ground that the complaint failed to state a claim. Dowse appealed, making the same arguments as are advanced here by the appellants. This court in affirming the dismissal by the trial court said at pages 110 and 111 of the Utah Reports, at pages 724 of 255 P.2d:

> The factual allegations in the complaint with regard to the plaintiff's property must be read in light of these further recited facts. Plaintiff's complaint stated that his property was located in a

potential, industrial commercial area; that it was unsuitable for residential property; that its value would become greatly enhanced if it were rezoned to industrial uses. Such allegations do not show a confiscatory, discriminatory or arbitrary action by the City authorities which would justify a judicial alteration or extension of the boundaries of the zone. * * *

\* \* \* \* \* \*

In this jurisdiction the discretionary power to district and zone cities for various purposes incident to the public interest is granted to the governing body of the city by statute. Sec. 10–9–1, 2, 3, U.C.A.1953. Palpably the exercise of the zoning power is a legislative function and activity. [Citation omitted.] The wisdom of the plan, the necessity, the number, nature and boundaries of the district are matters which lie in the discretion of the City authorities, and only if their action is confiscatory, discriminatory or arbitrary may the court set aside their action. [Citation omitted.] The fact that plaintiff's one-half lot might be more profitably used for commercial than for residential purposes, or indeed, the fact that it has become unsuited for residential purposes does not show discrimination or reveal arbitrary action. The character of the district as a whole must be kept in mind in determining whether the health, safety, morals or general welfare of the district and hence of the

community would be promoted by permitting encroachment into the residential area of commercial or industrial etsablishments. [Citations omitted.] * * *

The reasoning of the Dowse case is applicable here. We see nothing arbitrary or discriminatory or confiscatory in the refusal to rezone the plaintiffs' land. Plaintiffs are not deprived of their property. They bought grazing land, and they still own grazing land. It well may be that should their holdings be zoned for highway services, they would prosper, and it also may well be that other established highway services would be put out of business.

This matter was tried to the court, and in a memorandum decision the court held:

1. The zoning resolution of Beaver County is valid, and is valid as applied to the plaintiffs' properties.

2. The Board of County Commissioners of Beaver County did not act unreasonably in denying the plaintiffs' petition to amend the ordinance and re-classify plaintiffs' properties.

3. Defendants are entitled to judgment of no cause of action in each of the above entitled matters.

■ This being an equitable proceeding, we may review the findings but should not disturb them unless they are clearly against the weight of the evidence. Shaw v. Jeppson, 121 Utah 155, 239 P.2d 745 (1952).

■ Plaintiffs make a further claim that the ordinance is invalid in that it provides for highway service zones, yet no land is zoned for that use. We do not think this is a fatal defect. By providing for the classification when the ordinance was passed, the board evidently felt there was no need for such services at that time, and when the need arises, so that the health, safety, morals, or general welfare of the county requires it, the land may be changed from one zone to another more readily than would be the case if no provision was originally made for such services and a new ordinance had to be passed. We think the evidence amply supports the decision of the district court, and we, therefore, affirm it. Costs are awarded to the respondent.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.