Rodney MARTIN, Plaintiff
and Respondent,

v.

Bernice SCHOLL, Executrix of George H.
Chaffin Estate, and George H. Chaffin
Investment Company, a Utah limited
partnership, Defendants and Appel-
lants.

No. 17542.

Supreme Court of Utah.

Nov. 14, 1983.

Arthur H. Nielsen, Clark R. Nielsen,
John D. Russell, Salt Lake City, for defend-
ants and appellants.

Gordon L. Roberts, Raymond J. Etchev-
erry, Kent O. Roche, Salt Lake City, Dave
McMullin, Payson, for plaintiff and respon-
dent.

HOWE, Justice:

Defendant George H. Chaffin Invest-
ment Company, a limited partnership,
seeks reversal of a decree granting plain-
tiff Rodney Martin specific performance of
an oral contract which the trial court found
that the deceased George H. Chaffin had
made to convey or devise to him certain
real property in Genola, Utah County.

Martin began working as a ranch laborer
for Chaffin in 1936. He became foreman
over all of Chaffin's farm and ranch prop-
erties in 1947 and continued in that capaci-
ty beyond Chaffin's death to January of
1976. The Investment Company disputed
but the trial court found that Chaffin in
1947 had orally agreed to convey to Martin
120 acres of land referred to as "the home
place" if Martin would continue working as
his foreman. Martin remained, receiving a
salary and occasional raises. The trial
court determined that he labored long and
unusual hours and, with his wife, rendered
personal services to Chaffin in reliance
upon the contract. In 1968 Chaffin formed
the Investment Company as part of his
estate plan and conveyed certain real prop-
erty to it, including the 120 acre ranch.
The trial court found that Martin had no
notice of the conveyance and, further, that
a gift of an interest in the Investment
Company which Chaffin had made to Mar-
tin in 1969 was for his faithful service,
unrelated to the 1947 agreement. The trial
court held that Chaffin had breached the
oral agreement when he died in 1975 with-
out having conveyed or devised the ranch

to Martin. Consequently Martin was granted a decree of specific performance against the Investment Company which, as a constructive trustee, held the ranch for him. No cause of action was found against the executrix of the Chaffin estate.

Our standard of review was stated in *Randall v. Tracy Collins Trust· Co.*, 6 Utah 2d 18, 23, 305 P.2d 480, 483 (1956):

In an equity review of facts if the record shows a fair preponderance, or even if the evidence is balanced evenly, the trial court finding should be sustained. If the evidence is so vague and uncertain that the finding is obviously erroneous, there may be a new finding on review.

█ Ordinarily a verbal gift of land or an oral agreement to convey land is within the statute of frauds. However, the doctrine of part performance allows a court of equity to enforce an oral agreement, if it has been partially performed, notwithstanding the statute. U.C.A., 1953, § 25-5-8 of the Utah Statute of Frauds provides:

Nothing in this chapter contained shall be construed to abridge the powers of courts to compel the specific performance of agreements in case of part performance thereof.

In the context of an elderly aunt's promise to devise property to her nephew, this Court outlined our standard of sufficient part performance:

First, the oral contract and its terms must be clear and definite; second, the acts done in performance of the contract must be equally clear and definite; and third, the acts must be in reliance on the contract. Such acts in reliance must be such that a) they would not have been performed had the contract not existed, and b) the failure to perform on the part of the promisor would result in fraud on the performer who relied, since damages would be inadequate. Reliance may be made in innumerable ways, all of which could refer exclusively to the contract. This reliance provision is included to prevent unfounded and fraudulent claims against a decedent's estate, which are inherent within such situations as this.

*Randall v. Tracy Collins & Trust Company*, supra, at 24, 305 P.2d at 484. In that case we held that the nephew's change of residence from Ogden to Provo in order to live near his aunt, to care for her and to manage her affairs met that standard. Professor Corbin states a similar standard:

(1) The performance must be in pursuance of the contract and in reasonable reliance thereon ... (2) The performance must be such that the remedy of restitution is not reasonably adequate ... (3) The performance must be one that is in some degree evidential of the existence of a contract and not readily explainable on any other ground.

2 Corbin on Contracts, § 425 (1950). Another statement of the rule explains:

Part performance to be sufficient to take a case out of the statute must consist of clear, definite, and unequivocal acts of the party relying thereon, strictly referable to the contract, and of such character that it is impossible or impracticable to place the parties in status quo, mere nonaction being insufficient.

37 C.J.S., Statute of Frauds, § 250 (1943).

The critical observation to make in reading these delineations of what constitutes sufficient part performance is that it must be proved by strong evidence. Whether phrased in "reliance" terminology where the evidentiary measurement is a substantial change in position or worded in "performance" language where the measurement is whether the acts appear to be a result of the contract, or whether they are explainable on another ground, the strong, acts-oriented evidentiary standard is constant. This acts-oriented rather than word-oriented evidentiary requirement is consistent with one of the worthwhile functions of the Statute of Frauds. It is:

[to impose] a high evidentiary standard by which oral real estate contracts must be proved to qualify for a specific performance. Equity has always demanded more conclusive proof of a contract before granting its "most perfect remedy" of specific performance ...

"The Doctrine of Part Performance as Applied to Oral Land Contracts in Utah," 9 Utah Law Review 91, 105 (1971).

This Court in *Price v. Lloyd,* 31 Utah 86, 86 P. 767 (1906), reversed a judgment which had awarded land to a niece who had performed personal services for the deceased and, with her husband, had moved onto his property. The judgment was reversed because the niece's use of the land and other acts for her uncle were insufficient evidence "that her status or relation had been so far altered that not to enforce a performance ... inflict[ed] an unjust and unconscionable ... loss to her.... She [showed] no such strong equities ... as ... are required to be shown independent of the parol gift or verbal contract." *Id.* at 101, 86 P. at 772. Speaking of certain improvements the niece made to the land, this Court stated:

> [W]e are of the opinion that the improvements are not of such value or character as to take the case out of the operation of the statute. Furthermore the evidence does not satisfy us with that clearness and persuasion required by the authorities that they were made in consequenc [sic] of a gift, or in pursuance of a promise to convey, or that they are otherwise referable thereto. Indeed, there is little or no direct evidence proving such fact, nor is there any circumstance from which it may be reasonably inferred ... [The improvements] ... are as consistent with some interest in the premises less than a freehold as with an estate in freehold.

*Price v. Lloyd, Id.* at 98, 86 P. at 770.

This strong evidentiary standard had been observed in *Brinton v. Van Cott,* 8 Utah 480, 33 P. 218 (1893). There, in reliance language, this Court held that the defendant's failure to fulfill the contract would work a fraud upon the rights of the plaintiff since she gave up plans of future independence to faithfully perform personal services of incalculable value for the defendant. Although the young woman's reliance was continued performance of service rather than a substantial change in position, the evidentiary concern was satisfied since it was uncontested that the young woman's sacrifice of plans of future independence and continued service were a result of an actual contract. Crucially significant was the fact that the existence of the contract had been admitted as true. Further:

> The agreement was distinct and certain as to what plaintiff should receive. There was no vague, uncertain, undefined expectation of benefits to be derived, but a distinct positive promise,— not to make plaintiff a gift, but in consideration of certain services, to bestow upon her her entire property.

*Id.* at 486, 33 P. at 220. Consequently, in *Brinton,* both equity and the statute of frauds' purpose of verifying an actual agreement were accomplished.

Similarly, this Court maintained a high evidentiary standard in *Van Natta v. Heywood,* 57 Utah 376, 195 P. 192 (1920). We stated:

> [T]his class of cases should be scrutinized with particular care; and unless under the circumstances the proof is positive, clear, and convincing, the relief sought should, and will, be denied.

*Id.* at 381, 195 P. at 194. Significantly, not only many friends' and neighbors' testimony but independent evidence supported the existence of an oral contract and the plaintiff's reliance upon it:

> [T]he plaintiff accepted the offer of the said Joseph McCullough [decedent], and entered into possession of all the property of said estate, and at all times worked for the said Joseph McCullough until his death, without compensation, except when plaintiff was drafted into the United States army, during which time the said Joseph McCullough leased the property belonging to his said estate subject to the condition that the said lease should be canceled upon the discharge and return of the plaintiff herein from the army; that upon the retirement of plaintiff from service in the army he returned to the said Joseph McCullough, and thereupon the lease was terminated, and

plaintiff again went into possession of the property of said estate, and continued to possess the same and care for and remain with the said Joseph McCullough, without compensation, until the death of said McCullough ...

*Id.* at 377, 195 P. at 192.

As we have suggested, the greatest value of the requirement of exclusively referable acts of reliance is its evidentiary significance.

[A]cts of part performance must be exclusively referable to the contract in that the possession of the party seeking specific performance and the improvements made by him must be reasonably explicable only on the postulate that a contract exists [Citations omitted.] The reason for such requirement is that the equitable doctrine of part performance is based on estoppel and unless the acts of part performance are exclusively referable to the contract, there is nothing to show that the plaintiff relied on it or changed his position to his prejudice ...

*In re Roth's Estate*, 2 Utah 2d 40, 44, 269 P.2d 278, 281 (1954).

In *Ravarino v. Price*, 123 Utah 559, 260 P.2d 570 (1953), quoting from the earlier *Price v. Lloyd* case, we remarked:

"... In order that a plaintiff may be permitted to give evidence of a contract not in writing, and which is in the very teeth of the statute and a nullity at law, it is essential that he establish [in equity], by clear and positive proof, acts and things done in pursuance and on account thereof, exclusively referable thereto, and which take it out of the operation of the statute."

*Id.* at 574, 260 P.2d at 578. In the next paragraph we quoted Justice Cardozo:

"Equity ... declines to act on words, though the legal remedy is imperfect, unless the words are confirmed and illuminated by deeds...."

*Id.* at 574, 260 P.2d at 578. The Ravarino case involved an inter vivos transfer rather than an instance of a promise to devise. The statute of frauds remained a bar because the promisee did not acquire possession of the property and the purchase of a strip of adjoining land was reasonably explainable on grounds other than the existence of an oral contract.

As recently as in *McDonald v. Barton Brothers Investment Corp.*, Utah, 631 P.2d 851 (1981), another inter vivos transfer of land case, we reaffirmed the requirement of exclusively referable acts of reliance. We articulated:

If the acts relied on were not done in the execution of the oral contract but can be explained on another ground, they are insufficient to remove the bar of the statute of frauds and the contract is unenforceable.

*Id.* at 853. See also *Coleman v. Dillman*, Utah, 624 P.2d 713 (1981); *Holmgren Brothers, Inc. v. Ballard*, Utah, 534 P.2d 611 (1975). Cf. *Jackson v. Jackson*, 122 Utah 507, 252 P.2d 214 (1953) (where a property settlement agreement was an insufficient memorandum of an oral contract to remove the contract from the statute and the promisee's raising of the children was a term she had agreed to in the property settlement rather than an act exclusively referable to the oral contract).

However, as the *Brinton* and *Van Natta* cases allude, where the contract is admitted or strong independent acts which prove the contract exists, the requirement of exclusively referable acts has been relaxed. Therefore, in the case of *In re Roth's Estate*, supra, we remanded with instructions to grant specific performance because even though it was possible to explain the taking possession and making of improvements on some other basis than that a contract existed, the promisor's own testimony established an oral agreement on his part to sell his interest in the property to his brother. We explained the rule:

[W]here the existence of the oral contract is established by an admission of the party resisting specific performance or by competent evidence independent of the acts of part performance, the requirement that the acts of part performance must be exclusive[ly] referable to the oral contract is satisfied. ...

*Id.* 2 Utah 2d at 45, 269 P.2d at 281. Likewise in *Randall v. Tracy Collins & Trust Co.,* supra, 6 Utah 2d at 24, 305 P.2d at 484 we expressed:

> If the contract has great clarity and definiteness, there may be no need for reliance which is exclusively referable to the contract, so long as performance fulfills the terms.

In light of its history in our cases, the requirement of exclusive referability is "an evidentiary requirement of equity that the facts speak for themselves." 9 Utah Law Review 91, supra, at 107. The requirement overcomes "the court's reluctance to prevent the statute from operating on the basis of purely oral evidence." *Id.* at 106. As a corollary, where either independent acts which prove the contract can be found, or an admission of the contract is present, the requirement of exclusive referability may be relaxed because the evidentiary concern is assuaged by either the admission or the independent acts. Consequently, the more conclusive the direct proof of the contract, the less stringent the requirement of exclusively referable acts. As Professor Corbin puts it:

> If there is ample and convincing direct testimony less corroboration by circumstances is required. In most cases, such circumstantial corroboration is indispensable. . . .
>
> In great numbers of cases in which the part performance has been held insufficient on some ground or other and specific enforcement has been refused, the most compelling factor has been insufficiency of proof, the weakness often lying in the uncertainty and conflicting character of the direct human testimony itself.

2 Corbin on Contracts, supra, § 442 at 528.

■ In the case at bar the court found evidence to support a contract between Martin and Chaffin which was based upon the testimony of Martin's witnesses:

> 5. The Court finds that the terms of the oral contract between Martin and Chaffin are sufficiently supported by the testimony of the witnesses William Stanley Bradford, Albert Nielsen, Bill Nielsen and Eddie Allen, all of whom have no interest in the outcome of this case, to meet the burden of persuasion required by *Randall v. Tracy-Collins Trust Co.,* 6 Utah 2d 18 [305 P.2d 480], and the Court therefore finds that the oral agreement was entered into as alleged.

The court also found that Martin relied upon the oral agreement:

> 7. From the time Chaffin and Martin entered into their agreement in the spring of 1947 until Chaffin's death on July 30, 1975, Martin worked exclusively for Chaffin as his foreman in reliance upon their agreement that the subject property would be conveyed to Martin. In reliance on their agreement, Martin labored 10 to 16 hours per day, 7 days a week during the summer months and, occasionally when necessary, worked around the clock. In the winter time, Martin labored 8 to 10 hours per day, 7 days a week. During this period of time Martin's salary ranged from $75 per month in 1947, to $375 per month in 1975. From 1960 until 1969, Martin received $325 per month without a single raise. Additionally, it is found that Rodney Martin and his wife Martha, provided substantial personal services to Chaffin and that Martin's son Denny performed substantial labor with respect to the farming operations on Chaffin's farms and ranches for which he was not compensated. It is further found that these services would not have been provided but for the agreement between Chaffin and Martin that the subject property was to be conveyed to Martin.

The court concluded that Martin would not have continued to work for and provide personal services to Chaffin except for the agreement between them.

We respect the court's findings and recognize the deference to be paid to the trial court who views first-hand the witnesses as they offer their testimony. We have no quarrel with his basic findings of the extent of services rendered by Martin to his employer. However, reviewing the court's application of our law to those findings, we

can only conclude that the court erred in its holding that there was sufficient part performance. The trial court drew one conclusion from Martin's services but that is legally insufficient since they admit of another equally valid and consonant conclusion against his claim of contract. See *Price v. Lloyd*, supra.

The fact that Martin worked for Chaffin as his foreman is not an exclusively referable act of reliance on the alleged oral agreement since it was consonant with Martin's employment. Martin's long hours, not atypical of a ranch foreman's life, were remunerated by salary. Martin's wife's driving Chaffin to various locations on occasion and asking him to stay for dinner when he was at the Martin house during mealtime were not inconsistent with good relations between an employer and an employee and his family. (At least once Mrs. Martin received compensation for her efforts). Further, Martin's son was compensated for his labors from the time he reached the age of fourteen. (In arguing about the son's testimony, Martin's attorney agreed "The man has testified he got paid. I don't think there is any dispute about it.")

Martin's claim that he declined other and better offers of employment elsewhere to remain with Chaffin is also unavailing to prove reliance since, as we quoted earlier, mere nonaction is insufficient to constitute part performance. Professor Corbin concurs:

If the performance rendered by the promisee consists wholly of forbearance to act, the fact is less likely to be evidential in character than when it consists of affirmative action.

2 Corbin on Contracts, supra, § 430 at 474. This claim of forbearance is at best highly equivocal as to Martin's motives.

Of course, the fact that Martin continued to work long, hard hours for his employer might be viewed as sufficient reliance had there been an admission of an oral agreement as in *Brinton*, supra, or independent acts pointing to such an agreement as in *Van Natta*, supra, where the promisor leased the property contingent upon the promisee's return from the army. However, the evidence of the oral contract in this case required the judge to weigh the credibility of Martin's witnesses against witnesses for the Investment Company who vigorously disputed the existence of an oral contract. Thus the necessity of showing acts of part performance which were exclusively referable to the claimed agreement remains vital. Yet with only the foundation of a finding of fact that a contract was made based upon disputed testimony that the ranch had been orally promised to him over 30 years ago, Martin contends (and the dissenting opinion advocates) that the oral contract should be enforced. None of the case law we have discussed would permit it. In all of our cases either the requirement of acts of exclusive referability was met, or it was relaxed where there was no evidentiary concern regarding the existence of a contract. Neither Martin's proof of the oral contract nor his acts in supposed reliance so comply.

Even in *Randall v. Tracy Collins Trust Co.*, supra, which is most similar to the case at bar, the nephew changed the location of his home, and left his business to become an employee of his aunt's bank so that he could look after her business in reliance upon the oral contract. Moreover, he and his family changed lifestyles to prepare meals and sit home with her at nights and on holidays. Martin and his family did not change locations, interrupted no lifestyle and did no other acts that were not consonant with his job as ranch foreman. In *Randall* the contract and its terms were proved by clear, convincing and unequivocal testimony. We found the evidence to be sufficient because as we quoted from the trial court's memorandum decision:

"There is no direct evidence to dispute any of this testimony, and a careful examination of the transcript certainly would not justify a concept that the effectiveness of the testimony had been destroyed on cross examination."

*Id.* at 22, 305 P.2d at 483. However, the testimony of Martin's witnesses as to the existence of an oral contract was controverted and a major point of dispute of the lawsuit.[1] The trial court's finding of an oral contract must be followed by a finding of exclusively referable acts which Martin has failed to demonstrate. He and his family's acts of labor, neighborliness and forbearance, as we have expressed, were entirely consonant with his employment as ranch foreman. Even if we follow the standard advocated in the dissenting opinion (which is mentioned in some of our cases and by Professor Corbin) that the acts of part performance need only be "not readily explainable" or "not reasonably explicable" on some other ground, our result would not be different. Martin's acts of claimed part performance of a vigorously disputed contract are so equivocal that they do not meet any of those high evidentiary standards.

We have no quarrel with the argument in the dissenting opinion that the statute of frauds should not be used to perpetrate a fraud upon an innocent and unsuspecting person such as an employee who renders services in good faith upon a promised expectation. Such a rule would be easy to apply if there were some magical way of determining in each case whether in fact a contract had indeed been made. We could then apply the statute as a bar or refuse to apply it depending upon whether a contract was in fact made. There being no sureproof method of determining whether a contract was made, the Legislature has made it the policy in this state that oral contracts for the conveyance of land will not be enforced except where there is sufficient part performance to provide a high evidentiary basis for their existence. This policy which the Legislature has translated into the statute of frauds may well result, in some cases, in the denial of a benefit to a well-deserving employee or servant. We are helpless to prevent that result where the evidence of part performance of the claimed contract falls below the high evidentiary standard required by courts of equity—regardless of the precise words which they may use in describing that standard. As unfortunate as it would be to deprive a man who had worked his life in reliance upon the expectation of receiving property, it would be equally serious to take property from an owner after his death (when he cannot be heard) on the strength of a questionable oral agreement supposedly made many years prior. If the statute of frauds is to be given any force, we cannot affirm the trial court.

With the exception of Martin's interest in the Investment Company, the decree is reversed. Costs awarded to appellant.

HALL, C.J., and OAKS, J., concur.

STEWART, Justice, dissenting:

I respectfully submit that the majority assumes the role of a trial court on this appeal by, in effect, retrying the case on a critical evidentiary point and ignoring the trial court's findings of fact which contradict the factual assumptions the majority makes. The consequence is that a man and his family who worked scme thirty years for the deceased George H. Chaffin is deprived of property which was promised to him in return for his services. In my view, the statute of frauds, which was designed to prevent frauds, in effect perpetrates on the plaintiff the very result which the statute was intended to avoid.

## I.

Crucial to this decision is our standard of review in equity cases. In *Jensen v. Brown*, Utah, 639 P.2d 150 (1981), we recently addressed that standard because of numerous inconsistent rules as to our scope of review in equity cases. We reiterated that "we reverse only when the trial court's finding is against the clear weight of the evidence." *Id.* at 152. *See also McBride v. McBride*, Utah, 581 P.2d 996

---

1. We find nothing in the record to indicate that the trial court found the existence of the contract by clear and convincing evidence as stated in the dissenting opinion. However, this fact is of no consequence to our decision.

(1978); *Chevron Oil Co. v. Beaver County,* 22 Utah 2d 143, 449 P.2d 989 (1969); *Metropolitan Investment Co. v. Sine,* 14 Utah 2d 36, 376 P.2d 940 (1962).

As the majority states, this Court in *Randall v. Tracy Collins Trust Co.,* 6 Utah 2d 18, 23, 305 P.2d 480, 483 (1956), enunciated the standard of review in statute of frauds cases:

> In an equity review of facts if the record shows a fair preponderance, or even if the evidence is balanced evenly, the trial court findings should be sustained. If the evidence is so vague and uncertain that the finding is obviously erroneous, there may be a new finding on review. *Stanley v. Stanley,* 97 Utah 520, 94 P.2d 465 [1939]; *Morley v. Willden,* 120 Utah 423, 235 P.2d 500 [1951]; *Perry v. McConkie,* 1 Utah 2d 189, 264 P.2d 852 [1953]; *Youngren v. King,* 1 Utah 2d 386, 267 P.2d 913 [1954].

However, the majority does not hold that the evidence as to the existence of the contract or as to any element of the doctrine of part performance is "so vague and uncertain that the finding is obviously erroneous." *Id.* Indeed, the Court does not hold that any of the findings are inadequately supported by the evidence. Rather, on its own view of the evidence, the Court simply holds that the plaintiff's conduct was not exclusively referable to the oral contract, without even acknowledging that the trial court, in effect, held that it was exclusively referable on the basis of substantial evidence.

## II.

The majority opinion is primarily devoted to establishing the proposition that in a part performance case the plaintiff's conduct relied upon to show part performance must refer "exclusively" to the contract. In *Randall v. Tracy Collins Trust Co., supra,* the case relied on by the trial court, this Court stated that the test for determining the necessary part performance is whether the plaintiff would not have performed the acts of part performance but for the contract. The trial court in the instant case, relying upon *Randall,* stated in its findings of fact: "It is further found that these services would not have been provided but for the agreement between Chaffin and Martin that the subject property was to be conveyed to Martin." This conclusion is based on the following detailed findings of fact:

1. Plaintiff Rodney Martin was employed by the defendant George H. Chaffin in 1932 as a laborer at Chaffin's quarry located in Lemington, Utah. Martin continued to work for Chaffin in that capacity until the fall of 1936 when Martin left the quarry and began work as a ranch laborer for Chaffin on Chaffin's farm and ranch properties located in both Genola and Payson, Utah. In 1938 Martin was made a foreman with respect to all of Chaffin's farm and ranch properties located in Genola, Utah. In 1947, Martin became the foreman with respect to all of Chaffin's farming and ranch properties and continued in that capacity until Chaffin's death in 1975; and thereafter until January 1, 1976 for Chaffin's successor in interest.

2. During the period of time that Martin worked for Chaffin, Chaffin owned a number of separate and distinct parcels of real property, each of which was referred to by a common name by Chaffin, his employees and residents of the community. The parcel which is the subject of this action consisting of 120 acres located in Utah County, State of Utah, particularly described as

> The Northwest quarter of the Northwest quarter of Section 34, Township 9 South, Range 1 East, Salt Lake Base and Meridian and the East half of the Northwest quarter of Section 34

was commonly referred to by the defendant Chaffin, the plaintiff Martin, Chaffin's employees and others in the community as the home ranch, the home place, or simply the ranch.

3. In the spring of 1947 Martin and Chaffin entered into an oral lease agreement under the terms of which Chaffin agreed (a) to lease three of his parcels of real property (namely, the 120 acre home

ranch, which is the subject of this action, the Staley pasture, and the Nielsen place) to Martin (b) to stock the properties and (c) to provide the equipment necessary for farming operations. In consideration for this lease, Martin agreed to pay to Chaffin 50 percent of the profits which he derived from the operations on these three parcels of real estate. This oral lease was unilaterally terminated by Chaffin approximately four to six weeks after it was entered into.

4. At the time Chaffin terminated the above-described oral lease, he requested that Martin remain in his employment and act as foreman for all of his farming and ranch operations. As inducement, Chaffin offered and promised that in the event Martin remained with him as his foreman, he would convey the 120 acres in Genola commonly known as the "home place" or "home ranch" to Martin at or before his (Chaffin's) death and would raise Martin's salary $25 per month. After several days of deliberation and discussions with his wife, Martin accepted Chaffin's offer and immediately commenced performance under the terms of their agreement.

5. The Court finds that the terms of the oral contract between Martin and Chaffin are sufficiently supported by the testimony of the witnesses William Stanley Bradford, Albert Nielsen, Bill Nielsen and Eddie Allen, all of whom have no interest in the outcome of this case, to meet the burden of persuasion required by *Randall v. Tracy-Collins Trust Co.*, 6 Utah 2d 18, 305 P.2d 480, and the Court therefore finds that the oral agreement was entered into as alleged.

6. The Court further finds the agreement sufficiently complete to support a decree of specific performance.

7. From the time Chaffin and Martin entered into their agreement in the spring of 1947 until Chaffin's death on July 30, 1975, Martin worked exclusively for Chaffin as his foreman in reliance upon their agreement that the subject property would be conveyed to Martin. In reliance on their agreement, Martin labored 10 to 16 hours per day, 7 days a week during the summer months and, occasionally when necessary, worked around the clock. In the winter time, Martin labored 8 to 10 hours per day, 7 days a week. During this period of time Martin's salary ranged from $75 per month in 1947, to $375 per month in 1975. From 1960 until 1969, Martin received $325 per month without a single raise. Additionally, it is found that Rodney Martin and his wife Martha, provided substantial personal services to Chaffin and that Martin's son Denny performed substantial labor with respect to the farming operations on Chaffin's farms and ranches for which he was not compensated. *It is further found that these services would not have been provided but for the agreement between Chaffin and Martin that the subject property was to be conveyed to Martin.*

8. The Court finds that plaintiff completed his part of the bargain upon the death of George Chaffin.

9. In 1975 Chaffin died without having conveyed the subject property to Martin. [Emphasis added.]

It seems to me that unless the Court can demonstrate that these findings are erroneous, it cannot reverse the trial court without rewriting the standards of review which govern the relationship between this Court and the trial courts.

What the majority position essentially boils down to, as best I understand it, is that a person who makes an oral contract with his employer for the conveyance of land cannot under any circumstances rely upon his continuation in employment to show part performance of the oral contract. Perhaps that is an overstatement of the majority opinion; I certainly hope it is, but given the trial court's findings, and specifically the finding that "but for the agreement between Chaffin and Martin that the subject property was to be conveyed to Martin," Martin would not have performed the services which he did, I see no other alternative.

The plaintiff claims that he worked ten to sixteen hours per day, seven days a week, for nearly thirty years and that the reasonable value of his thirty years of work as a farm manager was shown to be approximately $400,000. The defendants, of course, denied these allegations, but it is significant that the trial court declined to make a finding, proposed by the defendants, that plaintiff's salary was consistently higher than the average salary paid to farm workers in Utah during the entire period of his employment.

I submit that the trial court's finding that the extraordinary services performed by the plaintiff and his family "would not have been provided *but for the agreement between Chaffin and Martin that the subject property was to be conveyed to Martin*," is simply another way of phrasing the majority's "exclusively referable" standard in cases of this type where an employee is induced to stay on working for another on the strength of a promise of a future conveyance. The test employed by the trial court is a stringent test—stringent enough to meet the basic policy underlying exceptions to the statute of frauds. It is a test that would avoid fraud and is also appropriate in light of the fact that a plaintiff in such circumstances as the instant is not likely to be able to show much stronger proof of part performance or substantial reliance than was shown here. Moreover, the "but for" test rests squarely on the authority of *Randall v. Tracy Collins Trust Co.*, 6 Utah 2d 18, 24, 305 P.2d 480, 484 (1956).

### III.

The majority concedes that although the "exclusively referable" doctrine is sometimes made an element of the part performance doctrine, as it is generally phrased, it need not be so if evidence is strong enough that an oral contract for the conveyance of land was entered into.

The "exclusively referable" doctrine is a special application of a generally broader and less stringent rule for sufficient part performance. Professor Corbin states the general rule as follows:

(1) *The performance must be in pursuance* of the contract and *in reasonable reliance thereon* .... (2) The performance must be such that the remedy of restitution is not reasonably adequate .... (3) *The performance must be one that is in some degree evidential of the existence of a contract and not readily explainable on any other ground.*

2 *Corbin on Contracts* § 425 (1950) (emphasis added).[1]

The third element of the rule of part performance as stated by Corbin does not require that the performance be "exclusively referable" to the contract, only that it be "in some degree evidential" of the contract's existence and "not readily explainable on any other ground." This standard, which is clearly lower than the "exclusively referable" test, has been previously articulated by this Court. *E.g., Ravarino v. Price*, 123 Utah 559, 575, 260 P.2d 570, 578 (1953) (part performance must be "clearly referable" to contract).

The rationale behind the "clearly referable standard" is that often evidence of the contract is not adequately proved by evidence independent of the part performance, and part performance in such circumstances acts as additional proof of the contract. "[T]he part performance must be clearly evidential of the existence of a contract—it must be such as would not ordinarily have taken place in the absence of a contract and therefore is not reasonably explicable on some other grounds." 2 *Corbin on Contracts, supra,* § 430 at 473.

However, where the existence of the contract is clearly shown by independent evidence, this standard is relaxed. Thus, Corbin states:

It has been held in a well reasoned case that the performance rendered by the plaintiff need not be such as to be referable to the contract in the sense

---

**1.** The majority quotes the same passage in its opinion, but it also quotes a far more strict statement of the standard from C.J.S., *Statute of Frauds*, § 250, which it seems to follow.

that it is clearly evidential that the alleged contract was made, if the defendant admits the making of such a contract but differs as to a part of its terms. The admission itself relates the performance to the contract and makes unnecessary any other proof of the terms so far as they are admitted.

2 *Corbin on Contracts, supra,* § 430 at 475.

By its rigid application of the "exclusively referable test," the majority raises the standard of proof in cases such as the instant case to a level that is unnecessarily high. In cases where the existence of the contract has already been proved by independent evidence, as in the instant case, the exclusively referable test in effect requires that the plaintiff "reprove" the existence of the contract by part performance. Even when the proof of the existence of the contract is somewhat in doubt, the majority requires corroboration by a standard much stricter than the one Corbin suggests. Concededly, where there is *no* other evidence of the contract, the "exclusively referable" test is an appropriate test. However, in this case there is other evidence of the contract.

Utah cases are in accord with the principle stated by Corbin. In *In re Roth's Estate,* 2 Utah 2d 40, 269 P.2d 278 (1954), the seller in an oral contract to convey land contended that because certain improvements to property by the buyer were not "exclusively referable" to the contract, the contract should not be enforced. We held that because the seller's own testimony established that an oral contract existed, the exclusively referable rule did not apply, even though "it might be possible to explain the taking of possession and the making of improvements on some other basis than that a contract existed." *Id.* at 44, 269 P.2d at 281. We cited with approval holdings from other jurisdictions that

where the existence of the oral contract is established by an admission of the party resisting specific performance *or by competent evidence independent of the acts of part performance,* the re-

quirement that the acts of part performance must be exclusive[ly] referable to the oral contract is satisfied.

*Id.* (emphasis added), citing *Jones v. Jones,* 333 Mo. 478, 63 S.W.2d 146 (1933); *Higgins v. Exchange Nat. Bank,* 142 Misc. 69, 253 N.Y.S. 859 (1931). Similarly, in *Randall v. Tracy Collins Trust Co.,* 6 Utah 2d 18, 24, 305 P.2d 480, 484 (1956), we stated:

If the contract has great clarity and definiteness, there may be no need for reliance which is exclusively referable to the contract, so long as performance fulfills the terms.

*Accord Van Natta v. Heywood,* 57 Utah 376, 195 P. 192 (1920); *Brinton v. Van Cott,* 8 Utah 480, 33 P. 218 (1893).

Of the cases cited by the majority which are apparently to the contrary, two are distinguishable. In *Holmgren Brothers Inc. v. Ballard,* Utah, 534 P.2d 611 (1975), the issue was not whether the part performance was exclusively referable, but whether a contract existed at all. Although the evidence showed that an oral contract to convey land had originally existed, the buyer later repudiated the contract by refusing to accept the proferred conveyance. We held that the buyer's weeding and discing of the land was not sufficient evidence to prove the contract. *Jackson v. Jackson,* 122 Utah 507, 252 P.2d 214 (1953), is also distinguishable on the ground that the plaintiff failed to prove the existence of an oral contract to make a will.

The only cases actually to the contrary are *McDonald v. Barton Brothers Investment Corp.,* Utah, 631 P.2d 851 (1981); *Ravarino v. Price,* 123 Utah 559, 260 P.2d 570 (1953); and *Price v. Lloyd,* 31 Utah 86, 86 P. 767 (1906). The rule in those cases is that even where the existence of an oral contract is clearly and convincingly proved by evidence independent of the part performance, the part performance must be shown to be exclusively referable to the contract. The rationale is that the part performance doctrine is essentially one of estoppel, *Ravarino v. Price, supra,* 123 Utah at 567, 260 P.2d at 574, and that the referability of the past performance must

be shown in order to establish the requisite reliance on the contract. *In re Roth's Estate*, 2 Utah 2d 40, 44, 269 P.2d 278, 281 (1954). I submit that such an emphasis on estoppel is misplaced and that it should be weighed along with other pertinent factors.

If these cases are followed, even when significant substantial part performance has been rendered, the door is open for a defendant to deny a valid oral contract simply because he is able to conjure up a motive for the plaintiff's performance that is not exclusively referable to the contract. As Corbin states in the section entitled "Oral Contracts to Transfer Land in Return for Services":

> Where the making of the oral contract is proved beyond any reasonable doubt, and where the services have been long[,] continued, onerous, and of a kind incapable of just estimation in money, the chancellor's conscience will be so moved as to lead to the conclusion that it is a "virtual fraud" for the defendant to hide behind the statute.

2 *Corbin on Contracts, supra*, § 435 at 498.

The rule should be that if clear and convincing evidence proves the existence of the contract, then it is sufficient for the plaintiff to show that the part performance is "clearly referable" to the contract, i.e., was clearly in reliance on the contract or in accordance with the terms of the contract. The opposing party should then have the burden of proving alternate explanations, if any exist, for the part performance. In fact, defendants in the instant case attempted to do this, and the trial court refused to find in their favor.

The majority concedes that "the more conclusive the direct proof of the contract, the less stringent the requirement of exclusively referrable acts." It then quotes with approval Corbin's statement that "[i]f there is *ample and convincing direct testimony* [then] less corroboration by circumstances is required." Even by the ma-

jority's own standard, then, the question here is whether the testimony was sufficiently "ample and direct" to prove, clearly and convincingly, that Chaffin contracted with the plaintiff to give him the "home place" when Chaffin died if the plaintiff would stay on as Chaffin's foreman.

The trial court was persuaded that the independent testimony of four disinterested witnesses proved the existence of such an oral contract between Martin and Chaffin. (See the trial court's finding of fact number five, quoted above.) William Bradford, a former employee of Chaffin, testified that in 1955 "[Chaffin] told me that if Rod stayed with him (Chaffin) he was going to get the Genola Home Place." Bradford had two other conversations with Chaffin, one in the late 1940's and one in 1965, which confirmed Chaffin's intent to leave the land in question to the plaintiff.

Albert Nielsen, a neighbor, testified that about six months before Chaffin died Nielsen asked to purchase ten acres of the land in question. Chaffin refused because when he died "[the land] belonged to Rod Martin."

Bill Nielsen, the son of Albert and also a neighbor, asked Chaffin in about 1970 or 1971 if he could buy some ground. Nielsen testified "[Chaffin] said he couldn't sell it because it was promised to Rod." This was confirmed by an earlier conversation between Bill Nielsen and Chaffin one summer when Bill had been an employee.

Finally, Eddie Allen, another former employee, testified that in about 1957 Chaffin had said that Martin "will get this place some day."

The trial court, on the basis of what I think is clear and convincing evidence, found that the contract alleged by plaintiff in fact existed. The majority discounts that finding and the supporting testimony and rules in effect that the evidence was not sufficiently clear and direct to establish the disputed contract.[2] It states that "the

---

**2.** The majority states in footnote 1 that "[w]e find nothing in the record to indicate that the trial court found the existence of the contract by

clear and convincing evidence as stated in the dissenting opinion." The trial court did not invoke that phrase, but the testimony of the

existence of the oral contract was controverted and a major point of dispute in the lawsuit." It also implies in quoting from *Randall v. Tracy Collins Trust Co.* that the above-summarized testimony was disputed by direct evidence, and that its effectiveness was "destroyed on cross-examination."

On the contrary, the record shows that the defendant did not destroy the testimony of plaintiff's witnesses by cross-examination, and the trial court impliedly so found. Thus, what the majority does is retry this case by reweighing the credibility of the witnesses. That is not the prerogative of this Court, irrespective of the fact that this is an action in equity.

Although I recognize that Chaffin (i.e., the deceased) performed acts on occasion which were not necessarily consistent with the existence of the contract conveying the property to plaintiff, I submit, on the other hand, that neither were those acts necessarily inconsistent with the existence of the contract. In any event, given the existence of the contract, Chaffin's subsequent conduct did not have the effect of either vitiating it or proving that it did not exist. What is critical, and is clear in the record, is that the plaintiff devoted his whole life to maintaining the deceased's farm as if it were the plaintiff's own farm. The trial court's finding that plaintiff would not have spent "his lifetime as he did but for" the existence of the contract should be dispositive.

I respectfully submit that the doctrine of part performance in this case has been construed so narrowly that it has failed to achieve its intended purpose of avoiding application of the statute of frauds with such rigor as to produce the very kind of fraud that the statute was intended to prevent.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.

witnesses referred to in Finding of Fact No. 5, quoted above in its entirety, was not controverted and, together with the conceded acts of the

plaintiff, consisted of evidence that clearly meets that standard.