305 P.2d 480

J. William RANDALL, Plaintiff and Respondent,

v.

TRACY COLLINS TRUST COMPANY, Executor of the Estate of Sarah P. Randall Brereton, Deceased, Defendant and Appellant.

No. 8430.

Supreme Court of Utah.

Dec. 29, 1956.

20

Arthur H. Nielsen, Salt Lake City, Wendell B. Hammond, George K. Fadel, Bountiful, for appellant.

Fabian, Clendenin, Moffat & Mabey, Peter W. Billings, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

Respondent, J. William Randall, brought an action in equity for specific enforcement of an alleged oral contract by the terms of which Sarah P. Randall Brereton, his aunt, promised to bequeath to plaintiff bank stock and real property in consideration of services to be rendered by him.

The trial judge, with the aid of an advisory jury, found that between April 1 and September 1, 1946, J. William Randall and Sarah P. Randall Brereton entered into an oral agreement whereby if Randall "would sell his home and leave his business in Ogden, Utah, move with his family to Provo, Utah; become an employee of the State Bank of Provo and would devote his time, talents, energy and attention to caring for her personal and financial affairs during her lifetime, that upon her death she would leave him, by her will, her home in Provo, Utah, and her stock constituting controlling interest in the State Bank of Provo." The court further found that Randall performed his part of the contract; that Mrs. Brereton executed a third codicil to her will shortly after the agreement was made leaving Randall the stock and home; that the services contemplated by the contract to be

---

performed by Randall were highly personal and hence damages would be inadequate for the breach thereof; and that Mrs. Brereton did in fact breach the contract by executing a fourth codicil to her will before she died by which she bequeathed the bank stock to her half-cousin, one Ross Richards.

Appellant's principal assignments of error are directed to the insufficiency of the evidence to support the decree below. It argues that respondent did not prove the contract and its terms by "clear, convincing and unequivocal" evidence. It is further contended that though the evidence as to the terms of the contract be held to conform to the recited standard, nevertheless, the services contemplated by the contract and performed pursuant thereto, though sufficient to support a judgment for damages, do not justify a decree of specific performance. Respondent, on the other hand, claims that the contract and terms were definitely established by clear and convincing testimony of the several witnesses which was uncontroverted by direct testimony to the contrary, and that the contract as proved and performed supports the decree entered. We shall examine the evidence in light of these contentions.

Mildred Brereton, a niece of the decedent testified that in the spring of 1939 the decedent made an offer to the witness to give "what she had" if the witness would stay with her and take care of her. Mildred Brereton refused the offer after some consideration. This offer is significant in showing the inference of the need for care and the state of mind of the decedent even if somewhat remote in time to the claimed agreement. Mildred Brereton also testified that decedent told the witness of plans to induce J. William Randall, the respondent, to move to Provo and take over her "personal and business affairs."

Later, after the respondent had moved to Provo, Mildred Brereton testified, that the decedent said that "Will" (respondent) had been good to her in looking after her needs, but it was owing her because of their agreement. The witness had understood a definite, written agreement was in effect.

Mildred Brereton's testimony is not inconsistent with the plaintiff's theory, as appellant argues, and certainly cannot alone substantiate affirmatively the appellant's theory that the contract, if there was one, had reference only to the management of her business affairs. This testimony is clear that an agreement existed between the plaintiff and the decedent. What the terms contemplated is a matter for other evidence to prove.

Witnesses Money and Dixon who were bankers and friends of both the plaintiff and the decedent each testified that in response to their offer to purchase her stock in Provo State Bank Mrs. Brereton led them to believe that she had made a deal whereby she was turning the stock over to Randall in return for his moving

to Provo to operate her interests and to "take care of her." Again the claim that the agreement concerned purely business interests omits the fact that the decedent needed personal as well as business care, as the record frequently illustrates.

The decedent told another witness, Mrs. John H. Zenger, that although she was lucky in having the Randalls look after her, she "had it coming to her because the Randalls were going to be taken care of." Mrs. Zenger also testified that the Randalls furnished decedent's meals of the kind and at the time ordered.

William W. Brereton, a nephew of the decedent's husband, testified that when he, on one occasion, offered to repair a furnace for Mrs. Brereton, the latter told him not to do so as this was Will Randall's duty. The witness on occasion had seen the Randalls straighten up the house, bring lunch to the decedent, and cut the lawn. Several times the decedent spoke in the presence of the witness of an agreement she had with Will Randall. On one occasion, Will had not yet arrived at Provo. "He was to come down and take care of her and her business, or her affairs," and "Will was supposed to get her bank stock and her home."

This last recited testimony appellant attempted to impeach on cross-examination by comparison with the deposition in which the witness had stated Will was to "get it all." Later in the cross-examination, the witness stated that he could recall the essence of the agreement, not the full particulars which he had heard. Then on redirect, the witness stated his best recollection was that the decedent had agreed to give respondent her home and bank stock. This more specific recollection was made after the witness had heard the testimony of Mildred Brereton, Money and Dixon, and Mrs. John H. Zenger. The fact that his memory seemed refreshed by the testimony he heard does not necessarily prove that he changed his testimony to conform with that of the other witnesses. The trial court could reasonably find to the contrary. As Judge Dunford pointed out in the trial court's memorandum decision:

"There is no direct evidence to dispute any of this testimony, and a careful examination of the transcript certainly would not justify a concept that the effectiveness of the testimony had been destroyed on cross examination."

When weighed with all the facts presented, there is ample reason to believe that this witness was telling the truth as he recalled it.

An attorney, Clyde D. Sandgren, of Provo, Utah, testified that during the time he was working for the Provo State Bank on a project of recapitalization, the decedent told Mr. Sandgren that she had asked the respondent to come to Provo to look after

her interests at the bank, and, as an inducement, had promised to leave him the controlling interest in the bank through her will. Mr. Sandgren subsequently drafted a letter at the direction of the decedent, in which he included what she asked him to write, to the Vice President of Tracy-Collins Trust Company. In that letter, the decedent's intent was expressed to leave her nephew, J. William Randall, the controlling shares of the bank stock.

In an equity review of facts if the record shows a fair preponderance, or even if the evidence is balanced evenly, the trial court findings should be sustained. If the evidence is so vague and uncertain that the finding is obviously erroneous, there may be a new finding on review. Stanley v. Stanley, 97 Utah 520, 94 P.2d 465; Morley v. Willden, 120 Utah 423, 235 P.2d 500; Perry v. McConkie, 1 Utah 2d 189, 264 P.2d 852; Youngren v. King, 1 Utah 2d 386, 267 P.2d 913. The bulk of the above testimony we find quite clear and convincing. The trial court's findings must therefore stand.

It is true that in an action for specific performance of an oral contract to convey land in consideration of services to be rendered, where the promisor is deceased, equity will scrutinize with an eye vigilant for any evidence of fraud before granting specific performance. But where the contract, as here, is proved by clear and convincing evidence, the only question is whether the requirements of part performance are sufficiently met to remove the contract from the provisions of the Statute of Frauds.

Utah law is clear that to enforce the contract in equity the services rendered must be of such nature that the value thereof cannot be ascertained with reasonable accuracy in an action at law, and be adequately compensated for by the recovery of damages. Brinton v. Van Cott, 8 Utah 480, 33 P. 218. In the Brinton case the services to be performed in consideration of the oral promise to convey property at the promisor's death were highly peculiar and personal. The old woman was cared for by a young girl, who rendered service which was similar to the care the Randalls provided for Mrs. Brereton in the instant case.

The case of Startin v. Madsen, 120 Utah 631, 237 P.2d 834, upon which appellant relies to claim a standard of adequate value of services, was a suit for value of service performed, and not for specific performance. The question of adequacy of damages was therefore not raised and the case is clearly not in point.

The Statute of Frauds, Section 25–5–1, Utah Code Annotated (1953) requires promises to convey interests in land to be in writing; but Section 25–5–8 allows part performance to remove an oral con-

24

tract from the Statute. The essence of the Utah doctrine of part performance is found in three cases: Brinton v. Van Cott, 8 Utah 480, 33 P. 218; Price v. Lloyd, 31 Utah 86, 86 P. 767, 8 L.R.A.,N.S., 870; and Van Natta v. Heywood, 57 Utah 376, 195 P. 192. Excluding the problem of value of services, three general criteria emerge in removing an oral contract from the Statute of Frauds by part performance. First, the oral contract and its terms must be clear and definite; second, the acts done in performance of the contract must be equally clear and definite; and third, the acts must be in reliance on the contract. Such acts in reliance must be such that a) they would not have been performed had the contract not existed, and b) the failure to perform on the part of the promisor would result in fraud on the performer who relied, since damages would be inadequate. Reliance may be made in innumerable ways, all of which could refer exclusively to the contract. This reliance provision is included to prevent unfounded and fraudulent claims against a decedent's estate, which are inherent within such situations as this.

█ If the contract has great clarity and definiteness, there may be no need for reliance which is exclusively referrable to the contract, so long as performance fulfills the terms. Both Brinton v. Van Cott and Van Netta v. Heywood, supra, are examples of the latter. In both cases, the court decreed specific performance where the oral con-

tract to will property was explicit, and the terms were performed. See Corbin on Contracts, (1950 Ed.) Sections 430, 432, 435 and 442; see also Williston on Contracts, (1936 Ed.) Section 494.

█ In the instant case not only was the oral contract clear and definite, but also the performance was in reliance thereon. Respondent left his business and home in Ogden in moving to Provo. He and his family gave up many normal activities to care for the decedent night and day. Many times at night or on holidays the decedent requested Mr. Randall to sit with her for hours at a time. Mr. Randall's son testified to the abnormal family life led by the Randalls while caring for the decedent, in addition to mananging her business affairs. Such evidence is manifestly indicative of performance in reliance on the contract which is incapable of pecuniary remuneration. This performance was clearly sufficient to remove from the Statute of Frauds.

The next questions are whether refusal to allow the introduction of evidence of respondent's income before and after he moved to Provo was improper and prejudicial; and whether admitting conversation between attorney Clyde D. Sandgren and decedent was erroneous as privileged.

█ The trial court in rejecting the proffered evidence of respondent's income before and after he moved to Provo based its ruling on the ground that it would require

the trial of collateral issues relative to wage and salary trends of the period and comparative business and other advantages in Provo and Ogden. The ruling was not erroneous. In any case, in light of the whole record, it was not prejudicial.

◼ The argument of attorney-client privilege under Section 78-24-8(2), Utah Code Annotated (1953) fails, for such communication must be made "in the course of professional employment." Here, the attorney was employed by Provo State Bank on a recapitalization project at the time of the testified conversation with the decedent. He did not become employd by her until a later date. This court has recognized the inapplicability of privilege to a friendly relationship between attorney and another not arising during the course of professional employment. Burton v. McLaughlin, 117 Utah 483, 217 P.2d 566; and see Wigmore on Evidence, Sections 2303-2304. In addition, the nature of the communication was the same as testified to by other witnesses (i. e., relating to the agreement between Randall and decedent), and as such was made public, thereby waiving the privilege.

◼ The remaining point raised concerns the use of an advisory jury in an equity case. Rule 39(c) of the Utah Rules of Civil Procedure unequivocally states that in "actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury * * *." The discretion of the trial court to use such a jury in a fact determination was entirely proper.

◼ Since the oral contract was proved by clear and definite evidence, and since part performance removed the contract from the Statute of Frauds, being partly unique and personal, the decree of specific performance was appropriate.

The other arguments by appellant, that findings did not conform to the pleadings, and that the contract was illusory in allowing decedent to bequeath only what stock she had at the time of her death, are tenuous.

Judgment and decree affirmed, costs to respondent.

CROCKETT, HENRIOD, and WADE, JJ., concur.

WORTHEN, J., having disqualified himself, does not participate herein.

JEPPSON, District Judge (concurring).

To enable a person to get specific performance, it has been said that the service must be highly peculiar and personal. The cases cited by counsel deal with personal care involving companionship, love and affection.

26

In this case there was not the usual amount of care of the person of the decedent by the plaintiff personally, as appears in Brinton v. Van Cott, 8 Utah 480, 55 P. 218, but the plaintiff gave personal care to the business of the deceased which involved more than mere business management and gave some personal care to the decedent. Her business was such, including the representation of the majority of the stock in the bank on the Board of Directors, that the proper care of such a business would involve peculiar and personal attention.

The trial court excluded evidence of advantages to the plaintiff in coming to Provo to live without getting the bank stock upon the death of the decedent, that the defendant claimed would show sufficient inducement for the plaintiff to move to Provo without relying on a promise of receiving the bank stock.

I am of the opinion that reliance is material and that it was error to exclude the evidence, but I cannot see that the admission of the evidence would have produced a different result. The oral agreement for the plaintiff to move to Provo could have several promises, each of which may have appeared to be sufficient to improve the plaintiff's conditions, and thus induce some person similarly situated to make the move. Such fact does not prevent a promisee, such as the plaintiff, from relying on several alluring considerations.

Changing one's residence may involve social and other disadvantages that would require several economic advantages to persuade the promisee to make the move.

The evidence is, in my opinion, admissible itself but it is not sufficient to change the result and justify a new trial. I concur in the result of the majority opinion.