IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Ross Wilberg and Wes C. Garrett Wilberg, | ) | MEMORANDUM DECISION |
| | ) | |
| | ) | Case No. 20100781-CA |
| Plaintiffs and Appellants, | ) | |
| | ) | |
| v. | ) | F I L E D |
| | ) | (August 23, 2012) |
| Albert C. Hyatt and Clyde Magnuson, | ) | |
| | ) | 2012 UT App 233 |
| Defendants and Appellees. | ) | |

-----

Seventh District, Castle Dale Department, 070700182
The Honorable George M. Harmond

Attorneys:     Don M. Torgerson and Samuel P. Chiara, Price, for Appellants
               Brant H. Wall, Salt Lake City, for Appellee Clyde Magnuson
               Michael D. Olsen, Castle Dale, for Appellee Albert C. Hyatt

-----

Before Judges Orme, Roth, and Christiansen.

ROTH, Judge:

¶1     Plaintiffs Ross Wilberg and Wes C. Garrett Wilberg appeal the district court's grant of partial summary judgment against them on their claim for breach of contract as well as the district court's rejection of their claim for unjust enrichment following a bench trial.  We affirm in part and reverse and remand in part.

¶2     This case arises from a dispute over an alleged oral contract to convey property from Defendant Albert C. Hyatt to his grandsons, the Wilbergs.  In particular, the Wilbergs claim that Hyatt promised Ross that he would convey one of his properties,

the Rock Canyon Ranch, to the Wilbergs if they regularly worked for Hyatt until his death and if, once Hyatt died, they would take care of Hyatt's son, their uncle, until his death. According to the Wilbergs, over the course of the following decade they "performed [the] duties required by the contract" by "work[ing] almost daily on" and "manag[ing] most of the . . . operations" of the Rock Canyon Ranch, "all without compensation."

¶3 The Wilbergs also allege that "in reliance on the [c]ontract, [they] invested money into the [Rock Canyon Ranch] . . . including investment of . . . resources and labor to install an irrigation system . . . for which [they] ha[ve] not been compensated or reimbursed." Specifically, Ross was eligible to receive a limited amount of federal funding in his lifetime that could be used for the installation of qualified irrigation systems. He used a portion of his federal funding to pay for the materials for an irrigation system that was installed on the Rock Canyon Ranch, including the pivot sprinkler and pipe.[1] The Wilbergs also contributed their labor to install the irrigation system on the Rock Canyon Ranch and to install a similar irrigation system on another property owned by Hyatt, the Clawson Ranch.[2]

¶4 Hyatt later sold the Rock Canyon Ranch to Defendant Clyde Magnuson. The Wilbergs filed a lien against the Rock Canyon Ranch for the materials and labor they contributed to install the irrigation systems on the Rock Canyon Ranch and the Clawson Ranch. The Wilbergs also sued both Hyatt and Magnuson. Against Hyatt they claimed, among other things, breach of contract and unjust enrichment. The Wilbergs also alleged other claims against Magnuson, which claims were contingent upon proving their breach of contract claim against Hyatt; essentially, the Wilbergs asserted that their

---

[1]Hyatt was also eligible to receive federal funding to install qualified irrigation systems, but Hyatt was only eligible to receive 75% of the predetermined cost of the irrigation system while Ross was eligible to receive 90%. According to Ross, he and Hyatt jointly decided to use Ross's federal funding to pay for the irrigation system on the Rock Canyon Ranch because it was the "better deal" and because Ross would eventually inherit the Rock Canyon Ranch.

[2]Although the Wilbergs contributed labor to install an irrigation system on the Clawson Ranch, those materials were paid for with federal funding that was available to both Hyatt and his daughter, the Wilbergs' mother.

claim to the Rock Canyon Ranch was superior to Magnuson's because Hyatt had made an enforceable contract to convey the property to the Wilbergs. The district court ultimately granted partial summary judgment to Hyatt on the Wilbergs' breach of contract claim, which also effectively disposed of all the claims the Wilbergs had brought against Magnuson. Later, the district court also rejected the Wilbergs' unjust enrichment claim against Hyatt following a bench trial. The Wilbergs appeal.[3]

## I. Partial Summary Judgment

¶5     On appeal, the Wilbergs challenge the district court's grant of partial summary judgment on their breach of contract claim on two bases. First, the Wilbergs argue that the district court erred in concluding that there were no genuine issues of material fact as to the existence of an enforceable oral contract under the part performance exception to the statute of frauds. Second, the Wilbergs argue that Hyatt's and Magnuson's summary judgment moving papers were inadequate under rule 7 of the Utah Rules of Civil Procedure. We address each of these arguments in turn.

## A. Part Performance

¶6     The Wilbergs first challenge the district court's grant of partial summary judgment on the basis that "there [was] not . . . any genuine issue of material fact to be resolved." *See generally* Utah R. Civ. P. 56(c) (providing that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").

¶7     Typically, the statute of frauds prohibits the enforcement of oral contracts for the conveyance of property. *See* Utah Code Ann. § 25-5-1 (2007) ("No estate or interest in real property . . . shall be created, granted, assigned, surrendered or declared otherwise than . . . by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same . . . ."). "However, the doctrine of part performance allows a court of equity to enforce an oral agreement, if it has been

---

[3]In his brief, Hyatt argues that the notice of appeal in this case is defective. However, in a December 2, 2010 order, this court considered and rejected this argument. We see no error in this previously-issued order, nor has Hyatt asserted one.

partially performed . . . ." *Martin v. Scholl,* 678 P.2d 274, 275 (Utah 1983). The part performance doctrine requires that "the oral contract and its terms must be clear and definite" and that the "acts done in performance of the contract must be equally clear and definite" and "must be [done] in reliance on the contract." *Id.* at 275 (internal quotation marks omitted) (explaining that the acts done in reliance on the contract must be such that "they would not have been performed had the contract not existed" and "the failure to perform on the part of the promisor would result in fraud on the performer who relied, since damages would be inadequate" (internal quotation marks omitted)). Stated more plainly, "the acts of part performance must be *exclusively referable* to the contract," *Bradshaw v. McBride*, 649 P.2d 74, 79 (Utah 1982) (emphasis added), meaning that "[t]he performance must be one that is in some degree evidential of the existence of a contract and not readily explainable on any other ground," *Martin*, 678 P.2d at 275 (internal quotation marks omitted). Exclusively referable acts are required because "'the equitable doctrine of part performance is based on estoppel and unless the acts of part performance are exclusively referable to the contract, there is nothing to show that the [person claiming the existence of an oral contract] relied on it or changed his position to his prejudice.'" *Martin*, 678 P.2d at 277 (quoting *In re Roth's Estate*, 2 Utah 2d 40, 269 P.2d 278, 281 (1954)).

¶8     However, the requirements of the part performance doctrine are malleable in that strong proof of one requirement may somewhat diminish the strength of the showing needed for another requirement. If the existence of the contract is undisputed or is not directly challenged, or "[i]f the contract has great clarity and definiteness, there may be no need for [acts performed in] reliance which [are] exclusively referable to the contract, so long as performance fulfills the terms" of the contract. *Randall v. Tracy Collins Trust Co.*, 6 Utah 2d 18, 305 P.2d 480, 484 (1956) (citing *Van Natta v. Heywood*, 57 Utah 376, 195 P. 192 (1920); *Brinton v. Van Cott*, 8 Utah 480, 33 P. 218 (1893)); *see also id.* (stating that the requirements of part performance are deemed satisfied in cases where "the oral contract . . . was explicit, and the terms [of the contract] were performed"); *Martin*, 678 P.2d at 277 (explaining that "where the contract is admitted or [where there are] strong independent acts which prove the contract exists, the requirement of exclusively referable acts has been relaxed" (citing *Van Natta*, 195 P. 192; *Brinton*, 33 P. 218)). In contrast, if the existence of the contract is disputed or is not clearly established, "the necessity of showing acts of [reliance] which [a]re exclusively referable to the [contract is] vital." *Martin*, 678 P.2d at 279 ("[T]he fact[s] . . . might be viewed as sufficient reliance had there been an admission of an oral agreement . . . or independent

acts pointing to such an agreement," but where the "existence of an oral contract" was "vigorously disputed" and could only be established based on "disputed testimony," "the necessity of showing acts of [reliance] which were exclusively referable to the claimed agreement [was] vital."); *Price v. Lloyd*, 31 Utah 86, 86 P. 767, 770-72 (1906) (reasoning that where the existence of the contract was disputed, there was sufficient evidence to establish the existence of the contract, but the evidence was insufficient to establish "the necessary and most essential allegation" that the plaintiff performed acts in reliance on the contract that were exclusively referable to the contract).

¶9     Ultimately, the part performance exception to the statute of frauds must be proved by clear and convincing evidence. *See Van Natta*, 195 P. at 194 (requiring "proof [that] is positive, clear, and convincing" to prove part performance); *see also Martin*, 678 P.2d at 275-77 (detailing the high evidentiary standard required to prove part performance). Indeed, no matter how the standard for part performance is set forth, "the strong, acts-oriented evidentiary standard is constant." *Martin*, 678 P.2d at 275.

¶10     In response to Hyatt's motion for summary judgment, the Wilbergs argued that there were genuine issues of material fact as to whether they could prove the existence of an enforceable oral contract under the part performance doctrine. *See generally Orvis v. Johnson*, 2008 UT 2, ¶¶ 13-19, 177 P.3d 600 (explaining that when the party moving for summary judgment is challenging a claim for which the nonmoving party will bear the burden of proof at trial, the movant must show that there are no genuine issues of material fact, and the burden then shifts to the nonmoving party who must set forth specific facts showing that there is a genuine issue of material fact for trial). The district court disagreed, however, and granted partial summary judgment on the Wilbergs' breach of contract claim, reasoning that "the terms of [the] alleged oral contract lack the clear, concise and definite terms that must be shown to validate any oral contract between [the Wilbergs] and . . . Hyatt" and that "the acts performed by [the Wilbergs] are explainable on grounds other than any oral contract . . . as asserted by [them]."

¶11     The Wilbergs argue that the district court's grant of partial summary judgment on their breach of contract claim was inappropriate because it resolved a fact-intensive issue as a matter of law. In particular, the Wilbergs assert that the court failed to recognize that the "facts give rise to genuine factual issues regarding [application of] the statute of frauds[, which] precluded summary judgment." In so arguing, the Wilbergs generally do not dispute the underlying facts but rather dispute the inferences that can

be drawn from those facts. We agree with the district court, however, that although the Wilbergs raised some factual issues in response to Hyatt's motion for summary judgment, those factual issue were not genuine issues of material fact because the evidence presented by the Wilbergs cannot establish by clear and convincing evidence either clear and definite terms of the oral agreement or clear and definite actions done in reliance on the agreement that are exclusively referable to the contract. *See, e.g., Stern v. Metropolitan Water Dist. of Salt Lake & Sandy*, 2012 UT 16, ¶ 83, 274 P.3d 935 (affirming the district court's grant of summary judgment because "[o]n th[e] record, no reasonable fact finder could conclude . . . by clear and convincing evidence that" the plaintiffs could prove the elements of their claim).

¶12    To prove the existence and terms of the alleged oral contract, the evidence the Wilbergs rely upon describes contractual terms that are imprecise, and they acknowledge that some aspects of the alleged oral contract "changed slightly over time." The Wilbergs nonetheless assert that "the essential provisions of the contract were clear and unambiguous"--namely, that they would work for Hyatt until his death and that they would then take care of their uncle until his death. But the Wilbergs also rely on more definitive evidence to establish the existence of the oral contract, consisting of certain documents that created a will, a trust, and an LLC. The trust and LLC were "never finalized or funded." Further, these documents were drafted several years after the Wilbergs claim that they entered into the oral agreement with Hyatt yet before Hyatt sold the Rock Canyon Ranch to Magnuson.

¶13    The Wilbergs claim that the will, trust, and LLC documents memorialize or "corroborate the existence of the verbal agreement" because they "were designed to provide for the transfer of the [Rock Canyon Ranch] to [the] Wilberg[s] at . . . Hyatt's death." Those documents, however, undermine rather than support the Wilbergs' position. Although the LLC and the trust documents do, indeed, provide a way for the Wilbergs to receive the Rock Canyon Ranch upon Hyatt's death, the district court accurately described them as undisputed "evidence that the parties thought quite differently about what was going to happen to the [Rock Canyon Ranch]." In particular, the LLC documents, which contemplated that the Rock Canyon Ranch would be transferred to the LLC, established Hyatt and Ross as the company's sole members, yet Hyatt retained a 99% interest with Ross retaining only the remaining 1%. Further, Hyatt was designated as the sole manager and, as such, had "absolute discretion" to "dispose of any real property" held by the LLC. Similarly, as the acting

trustee for the trust, Hyatt had authority to "sell . . . or otherwise dispose of . . . any properties of the [t]rust [e]state."[4]  In his uncontested affidavit, Hyatt explained that these documents "did provide a way for Ross to inherit the property, if those were [Hyatt's] wishes, but [the documents] also gave [Hyatt] control to sell [the] property if [he] desired."  Hyatt also asserted that in creating these documents he wanted to retain "absolute and complete control" of the property and "did not want to be forced to sell it to anyone."  Thus, the documents that the Wilbergs claim to be the clearest evidence of the alleged oral contract that Hyatt would transfer the Rock Canyon Ranch to them on his death fall far short of the "strong evidence" of "clear and definite" contractual terms that must be proven by clear and convincing evidence in order to establish an enforceable oral contract under the part performance doctrine.  *See Martin v. Scholl*, 678 P.2d 274, 275, 285 (Utah 1983).  Rather, the terms of the LLC, trust, and will documents that the Wilbergs rely on to prove the existence of the oral contract contradict their position that Hyatt had unequivocally agreed to transfer the Rock Canyon Ranch to them on his death.

¶14    Thus, the existence of the alleged oral contract is disputed and there are not "strong independent acts which prove [that] the contract exists."  *See id.* at 276; *see also Randall v. Tracy Collins Trust Co.*, 6 Utah 2d 18, 305 P.2d 480, 484 (1956) ("If the contract has great clarity and definiteness, there may be no need for reliance which is exclusively referable to the contract, so long as performance fulfills the terms.").  Consequently, because there is no "strong evidence" of a "clear and definite" oral contract, the Wilbergs must produce "strong evidence" of "clear and definite" "acts done in performance of the contract" that are exclusively referable to the contract and would not "have been performed had the contract not existed."  *See Martin*, 678 P.2d at 275.  Indeed, it is necessary and vital to the Wilbergs' claim that they be able to demonstrate reliant acts that are exclusively referable to the contract and that are not readily explainable on any other ground.  *See id.* at 275-77, 279.

¶15    Although the Wilbergs assert that they performed work for Hyatt for a decade in reliance on the oral contract, the Wilbergs' asserted actions of part performance are not exclusively referable to the contract.  Rather, as the district court reasoned, the

---

[4]The parties rely primarily on the LLC and trust documents in arguing their respective positions.  Although the will is part of an estate plan for Hyatt, its provisions add little to the issue at hand.

Wilbergs' actions are readily explained as an exchange of labor among family members. The undisputed facts indicate that not only did the Wilbergs work for Hyatt on his land, but that Hyatt also performed work on property owned by the Wilberg family (the Wilberg Ranch), "spend[ing] a great deal of time there," even "allow[ing] his machinery and equipment to be used on that property." Hyatt did this for many years, both when the Wilberg Ranch was owned by the Wilbergs and before that, when the property was owned by their father. Thus, as the district court concluded, "the acts performed by [the Wilbergs] are explainable on grounds other than the oral contract" and are not exclusively referable to the contract. *Compare id.* at 274, 279 (concluding that the plaintiff's conduct was "not an exclusively referable act of reliance on the alleged oral agreement since it was consonant with [his] employment," was not "atypical" of his lifestyle, and was "remunerated by salary"), *with Randall*, 305 P.2d at 484 (concluding that plaintiff had proven part performance because "not only was the oral contract clear and definite, but [so was] . . . the reliance thereon," which required moving and leaving "his business and home" and giving "up many normal activities" and leading an "abnormal family life" so as to fulfill his end of the agreement).

¶16 The Wilbergs have raised a dispute as to whether Hyatt promised to transfer the Rock Canyon Ranch to them at his death and as to whether the Wilbergs partially performed under that alleged oral contract based on inferences they have drawn from the underlying facts that are generally undisputed. However, the inferences drawn by the Wilbergs do not reach the level of plausibility necessary to establish by clear and convincing evidence either clear and definite terms of the agreement or acts done in reliance on the agreement that are exclusively referable to the agreement. *See generally Martin*, 678 P.2d at 278 ("In great numbers of cases in which the part performance has been held insufficient on some ground or other and specific enforcement has been refused, the most compelling factor has been insufficiency of proof, the weakness often lying in the uncertainty and conflicting character of the direct human testimony itself." (internal quotation marks omitted)); *Bradshaw v. McBride*, 649 P.2d 74, 80 (Utah 1982) (concluding that "[a]s a matter of law, [the plaintiff's] acts did not constitute part performance" because the "uncontradicted testimony . . . established" that plaintiff "did not . . . perform . . . work in reliance on the contract"). Ultimately, the Wilbergs cannot carry their evidentiary burden to prove by clear and convincing evidence the legal requirements of the part performance doctrine as an exception to the statute of frauds. *See Stern v. Metropolitan Water Dist. of Salt Lake & Sandy*, 2012 UT 16, ¶ 83, 274 P.3d 935 (affirming district court's grant of summary judgment because "[o]n th[e] record, no

reasonable fact finder could conclude . . . by clear and convincing evidence that" the plaintiffs could prove the elements of their claim). And as a consequence, the factual dispute raised by the Wilbergs is not material to resolution of the underlying legal issue and, therefore, does not preclude summary judgment in this case. *See generally Heglar Ranch, Inc. v. Stillman*, 619 P.2d 1390, 1391 (Utah 1980) (explaining that summary judgment is not precluded "simply whenever some fact remains in dispute, but only when a material fact is genuinely controverted"); *Jackson v. Dabney*, 645 P.2d 613, 615 (Utah 1982) ("A genuine issue of fact exists where, on the basis of the facts in the record, reasonable minds could differ on whether [a legal standard has been satisfied]."). We therefore conclude that the district court appropriately granted summary judgment on the Wilbergs' breach of contract claim.

B. Rule 7

¶17    The Wilbergs also challenge the district court's grant of partial summary judgment based on the adequacy of Hyatt's and Magnuson's moving papers. In particular, the Wilbergs allege that Hyatt and Magnuson failed to comply with rule 7(c)(3)(A) of the Utah Rules of Civil Procedure by "produc[ing] only six properly stated, undisputed facts . . . set forth to support the[ summary judgment] motions," which "facts, though undisputed, do not entitle [Hyatt] to judgment as a matter of law in this case." Indeed, Hyatt and Magnuson set out only six numbered factual statements in their moving papers and included other facts in support of their motion in the argument section of the supporting memorandum, contrary to the rule. *See* Utah R. Civ. P. 7(c)(3)(A) (requiring a "memorandum supporting a motion for summary judgement" to "contain a statement of material facts" with "[e]ach fact . . . separately stated and numbered"). The district court, however, has discretion to decide how to handle noncompliance with rule 7 and may require strict compliance with the rule or may "regard the failure to comply with the rule as a mere technical violation and consider the motion on its merits." *Jennings Inv., LC v. Dixie Riding Club, Inc.*, 2009 UT App 119, ¶ 24, 208 P.3d 1077. Here, the Wilbergs made this argument to the district court, and the court, without making an explicit decision regarding Hyatt's and Magnuson's compliance with rule 7(c)(3)(A), simply decided the summary judgment motion on the merits. Thus, the court apparently decided to treat Hyatt's and Magnuson's noncompliance as a "mere technical violation." *See id.* The Wilbergs have made no argument that they were in any way harmed by any noncompliance with rule 7(c)(3)(A), e.g., that they were unable to adequately respond to the summary judgment

motions due to Hyatt's and Magnuson's failure to comply with the rule. *See Salt Lake Cnty. v. Metro W. Ready Mix, Inc.*, 2004 UT 23, ¶ 23 n.4, 89 P.3d 155 (reasoning that because "the disputed facts were clearly provided in the body of the memorandum with applicable record references, . . . the failure to comply with the technical requirements [of the rule was] harmless"). We therefore conclude that the district court did not abuse its discretion in considering the merits of Hyatt's and Magnuson's summary judgment motions.[5]

## II. Unjust Enrichment

¶18    The Wilbergs next challenge the district court's rejection of their unjust enrichment claim, following a bench trial. To establish their right to recover under a theory of unjust enrichment, the Wilbergs were required to prove that Hyatt "received a benefit" and "appreciat[ed] or kn[ew] . . . of the benefit . . . under circumstances that would make it unjust for [him] to retain the benefit without paying for it." *See Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1987). "The measure of recovery . . . is the value of the benefit conferred on [Hyatt] . . . and not the detriment incurred by the [Wilbergs] or . . . the reasonable value of the [Wilbergs'] services." *See id.* (citation omitted).

¶19    In asserting their unjust enrichment claim, the Wilbergs argued that Hyatt had received a benefit in the form of the labor they performed for him over the course of a decade. Included in the benefit that the Wilbergs alleged they had conferred on Hyatt were the materials they contributed and labor they performed to install irrigation systems on the Rock Canyon Ranch and the Clawson Ranch. According to the

---

[5]The Wilbergs argue further that there is a distinction between forgiving noncompliance with rule 7(c)(3)(A), which applies to parties moving for summary judgment, and forgiving noncompliance with rule 7(c)(3)(B), which applies to parties responding to a motion for summary judgment. We do not reach the issue because this particular argument concerning a distinction between subsections (c)(3)(A) and (c)(3)(B) was not raised to the district court, *see generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original)), nor have the Wilbergs presented any authority or reasoning to explain why application of a different standard is warranted under subsections (c)(3)(A) and (c)(3)(B), *see generally* Utah R. App. P. 24(a).

Wilbergs, they conferred this benefit to Hyatt in reliance on the alleged oral contract for conveyance of the Rock Canyon Ranch--a contract the district court determined was unenforceable. Thus, the Wilbergs' unjust enrichment claim was an alternative argument to their breach of contract claim.

¶20    In considering the Wilbergs' claim for unjust enrichment, the district court decided to treat the general labor the Wilbergs alleged they had performed for Hyatt separately from the material and labor contributed for installation of the irrigation systems, explaining that "[b]ecause of the nature of this case and the value of the pivot, [it] fe[lt] compelled to analyze the construction of the pivot as a separate matter from the" general labor performed for Hyatt. The district court rejected the Wilbergs' unjust enrichment claim as applied to the general labor they had performed for Hyatt, reasoning that there was insufficient evidence to prove the claim. On appeal, the Wilbergs do not challenge this aspect of the district court's decision on their unjust enrichment claim.

¶21    In considering the Wilbergs' unjust enrichment claim with respect to the irrigation system, however, the district court reasoned that "[i]t is clear that [Hyatt] received a benefit in the receipt of federal funds for his pivot, and the installation of the water pipe to the pivot." The court then identified the remaining issue to be resolved as the value of that benefit, i.e., the value of the materials and labor the Wilbergs provided for the irrigation system. The district court concluded that the Wilbergs had failed to establish the value of the benefit they conferred onto Hyatt because they "lump[ed together] all the work done on [and the materials provided for the] Rock Canyon Ranch and the Clawson [R]anch" and had failed to allocate the labor and materials provided between the two ranches. The district court thus reasoned that "[b]ecause there is insufficient evidence to determine how much pipe is claimed for the Rock Canyon [Ranch] pivot, the [unjust enrichment] claim fails." The Wilbergs challenge this aspect of the district court's decision on appeal. We conclude that the Wilbergs' challenge in this regard is well taken because the Wilbergs sought compensation for their efforts related to the installation of irrigation systems on both the Rock Canyon Ranch and the Clawson Ranch and not on just the Rock Canyon Ranch, as the court appeared to believe.

¶22    At trial, Ross testified that working on the Clawson Ranch was not "something separate and apart" from but "was part of doing [work for] the Rock Canyon [Ranch]."

Thus, according to the Wilbergs, installation of the irrigation systems on both the Rock Canyon Ranch and the Clawson Ranch was part of the labor they agreed to perform in exchange for conveyance of the Rock Canyon Ranch. Because the purpose of the Wilbergs' unjust enrichment claim is to be compensated in some way for the labor they performed in reliance on the putative oral contract, and because the Wilbergs allege that the installation of the irrigation systems on both properties was done pursuant to that agreement, it seems unnecessary to require the Wilbergs to allocate between the two ranches. But even if the installation of the irrigation systems on the Clawson Ranch and the Rock Canyon Ranch was not done for this common purpose, the Wilbergs further point out that they "did not sue the Clawson [Ranch] or the Rock Canyon Ranch separately" but "sued Hyatt for . . . unjust enrichment," and because Hyatt owns both properties, he received a benefit as a result of the installation of both irrigation systems, regardless of whether the irrigation system was located on one property or the other. Because the "measure of recovery under[ a claim for unjust enrichment] . . . is the value of the benefit conferred on [Hyatt]," *see id.*, it seems to be legally irrelevant in this case whether the benefit conferred on Hyatt is physically located on the Rock Canyon Ranch or the Clawson Ranch. Further, based on the pleadings and the evidence presented at trial, the Wilbergs do not appear to have limited their unjust enrichment claim to only the benefit conferred on the Rock Canyon Ranch. On this basis, we therefore reverse the district court's denial of the Wilbergs' unjust enrichment claim and remand for further proceedings.

¶23    In addition, before reasoning "that [Hyatt] received a benefit in the receipt of federal funds for his pivot, and the installation of the water pipe to the pivot," the district court stated that "[t]he cost of the pivot was paid for from federal funding, and [therefore, the Wilbergs] are not out any cash as a result of the purchase of the pivot itself." The court's statement in this respect seems to imply that because the materials for the irrigation system were paid for with federal funding, the Wilbergs had not conferred a benefit on Hyatt.

¶24    A conclusion that the Wilbergs are not "out any cash" for the pivot materials simply because those materials were paid for with federal funding misunderstands a core aspect of an unjust enrichment claim. The measure of unjust enrichment is not the detriment to the party who conferred the benefit; rather, it is the value of the benefit conferred on the other party. *See Davies v. Olson*, 746 P.2d 264, 269 (Utah Ct. App. 1989). That said, Ross in fact used his federal funding to pay for the pivot materials in a way

that diminished resources that would otherwise have been available for his benefit. The pivot materials were paid for with federal funding that was available to Ross with a lifetime limit. At trial, Ross testified that he "[c]ould . . . have used that money" to install an irrigation system on the Wilberg Ranch had it not been used for the irrigation system on the Rock Canyon Ranch. According to Ross, installation of a similar irrigation system on the Wilberg Ranch would have qualified for federal funding, and "the size of the Wilberg Ranch would eat up both [his] and Wes'[s federal funding] and still leave [them] not enough [money] to finish" the irrigation system "because [they are] only allocated so much money for these sprinkler systems" over their lifetimes. Indeed, in addition to the federal funding he used for the irrigation system on the Rock Canyon Ranch, Ross used a portion of his federal funding to begin installing an irrigation system on the Wilberg Ranch and had only "maybe done a quarter of the Wilberg Ranch under sprinklers." Yet, between the Wilberg Ranch and the Rock Canyon Ranch, Ross had used most of his limited federal funding. Thus, although the Wilbergs did not individually fund the installation of the irrigation system, they did use limited funding to pay for the irrigation system installed on the Rock Canyon Ranch, which could have otherwise been used for the benefit of their own property.

¶25 However, it is unclear whether the district court's reasoning that the Wilbergs were "not out any cash" somehow affected its ultimate decision to deny the Wilbergs' claim for unjust enrichment or was simply the court's acknowledgment that the Wilbergs had not individually funded the installation of the irrigation system. Indeed, after stating that the Wilbergs were "not out any cash," the district court concluded "that [Hyatt] received a benefit in the receipt of federal funds for his pivot, and the installation of the water pipe to the pivot" and proceeded to reject the Wilbergs' unjust enrichment claim on another basis, *see supra* ¶ 21. If the notion that the Wilbergs were "not out any cash" did play a part in the court's decision to deny the unjust enrichment claim, that aspect of the court's decision is error. Although the Wilbergs did not pay for the materials for the irrigation system out of their own pockets, they gave up federal funding that they could have used on their own property for the benefit of Hyatt's property. Thus, they can be said to have conferred a benefit on Hyatt, for as we have explained, "[t]he measure of recovery under [the Wilbergs' claim for unjust enrichment] . . . is the value of the benefit conferred on [Hyatt] . . . and not the detriment incurred by the [Wilbergs] or . . . the reasonable value of the [Wilbergs'] services." *See id.* (citation omitted). Thus, whether the Wilbergs are "out any cash" is legally irrelevant to an unjust enrichment analysis, so long as the Wilbergs conferred a benefit on Hyatt.

¶26    In conclusion, we affirm the district court's grant of partial summary judgment against the Wilbergs on their breach of contract claim.  However, we reverse and remand the Wilbergs' claim for unjust enrichment as applied to the installation of the irrigation systems.  On remand, the district court should reconsider the Wilbergs' unjust enrichment claim in a manner consistent with this decision.[6]

_____
Stephen L. Roth, Judge

-----

¶27    I CONCUR:

_____
Michele M. Christiansen, Judge

-----

ORME, Judge (concurring):

¶28    I concur in the court's opinion.  I write separately to share my perspective on the scope of the trial court's charge on remand.  The trial court has already concluded—and appropriately so on this record—that a valuable benefit was conferred on Hyatt by the Wilbergs in the form of the installed sprinkler systems.  The trial court declined to order restitution of the value of the benefit conferred only because the Wilbergs did not allocate amounts expended as between the two properties and, perhaps, because the Wilbergs were "not out any cash."  The lead opinion suggests that it is not clear whether in making this comment, the trial court was making a gratuitous observation

_____

[6]We deny the Wilbergs' request for attorney fees on appeal as they have failed to "set forth the legal basis for such an award."  *See* Utah R. App. P. 24(a)(9).

or stating something germane to its resolution of the case. *See supra* ¶25. I assume it was the latter, but it does not really matter. Either way, as the lead opinion correctly concludes, this factor is legally irrelevant.

¶29    In the classic law school example, if I misunderstand a comment you make, and as a result set about to paint your fence, and you watch me do it and fail to intercede, I will ordinarily be entitled to a monetary award. Otherwise you would be unjustly enriched, even if it is concluded that we did not have a contract. You will owe me the value of the benefit I conferred on you. That amount will be very minimal if you had recently had the fence repainted and my work was essentially unnecessary. If your fence was in desperate need of painting, you will owe me either the going rate of a quality paint job, assuming I did quality work, or the amount by which the value of your property increased as a result of my work. *See generally* D. Dobbs, *Remedies* § 4.1, at 228 (1973) ("[S]ome measurement problems in restitution cases merely present the court with a choice of two measurements, but it is clear that the plaintiff is entitled to one of them. For instance, if the plaintiff performs services on the defendant's land, and seeks restitution therefor, there may be an option to award the value of the plaintiff's services in the labor market for such services, or the increased value of the land. In such a case there may be no doubt that the plaintiff is entitled to restitution . . . ; the only issue is the standard by which [the] benefit is to be measured."). But the restitution award will not be affected by whether I used paint that I got for free from my brother or paint that I ordered from an out-of-state paint dealer and which was shipped to me via overnight express. My out-of-pocket expense will be very different in each scenario but that is irrelevant to calculating the value of the benefit I conferred on you when I painted your fence.

¶30    We have set the record straight on both points. The installation of sprinkler systems on both ranches conferred a benefit on Hyatt, so it was unnecessary for the Wilbergs to limit their proof to the Rock Canyon Ranch. And whether or not the Wilbergs were out any money is legally irrelevant. Accordingly, it is clear to me that, on remand, an open-ended reconsideration of the Wilbergs' unjust enrichment claim is not in order. Rather, the court should proceed to fix the amount of a restitution award

in favor of the Wilbergs, calculated with reference to the value of the benefit conferred on Hyatt by reason of the installation of the sprinkler systems by the Wilbergs.[1]

_____

Gregory K. Orme, Judge

---

[1]"The restitution claim stands in flat contrast to the damages action in this respect. The damages recovery is to compensate the plaintiff, and it pays him, theoretically, for his losses.  The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep."  D. Dobbs, *Remedies* § 4.1, at 224 (1973) (footnote omitted).  That said, "[r]estitutionary recoveries often amount to about the same as the plaintiff's losses, and thus serve many of the compensatory purposes served by a damages recovery."  *Id.*