**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

U.S. COMMODITY FUTURES
TRADING COMMISSION,

     Plaintiff,

v.

U.S. VENTURES LC, a Utah limited
liability company; WINSOME
INVESTMENT TRUST, an
unincorporated Texas entity; ROBERT J.
ANDRES; ROBERT L. HOLLOWAY,

     Defendants.

------------------------------

ROBERTO E. PENEDO,

     Claimant - Appellant,

v.

R. WAYNE KLEIN, the Court-appointed
receiver of U.S. Ventures LC, Winsome
Investment Trust, and the assets of Robert
J. Andres and Robert L. Holloway,

     Receiver - Appellee.

No. 14-4077
(D.C. No. 2:11-CV-00099-BSJ)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding

(continued)

_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Roberto E. Penedo appeals pro se from a district court order that denied his claim against the receivership estate of Winsome Investment Trust. We exercise jurisdiction under the collateral-order doctrine and affirm.

## BACKGROUND

In 2006, RIO Systems, Inc., a Texas corporation "interested in . . . projects related to oil refinery planning, construction and finance in Central America," hired Mr. Penedo, the president of a Guatemalan "social service[s] and human rights foundation," Aplee. Supp. App., Vol. I at 262, "to act as a facilitator and lobbyist to the Guatemalan government" for the construction of a refinery, *id.* at 246. The resulting "Refinery Agreement," *id.* at 262, was executed by the president of RIO Systems (Clayton Ballard), Mr. Penedo, and the legal representative of Mr. Penedo's foundation. The agreement promised Mr. Penedo a 3% "equity ownership interest in the [p]roject." *Id.* at 265.

Despite not being a signatory to, or referenced in, the Refinery Agreement, Winsome, which was operated by a friend of Ballard's (Robert Andres), "began sending money to" Mr. Penedo "on behalf of" RIO. *Id.*, Vol. II at 288, 508. According to Ballard, Winsome "was a source of funds, of working capital" for RIO. *Id.* at 497.

_____

precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Although the Refinery Agreement was amended at least nine times, Winsome was never mentioned. And for reasons that are not in the record before us, the refinery was never built.

In January 2011, the United States Commodity Futures Trading Commission (CFTC) filed a complaint against Winsome, Andres, U.S. Ventures LC, and its CEO, Robert Holloway. The CFTC alleged that Andres operated Winsome as a Ponzi scheme, "fraudulently solicit[ing] . . . at least $50.2 million from at least 243 individuals to participate in . . . a commodity futures pool[ ] operated by" U.S. Ventures and Robert Holloway. *Id.*, Vol. I at 45. The district court appointed Appellee Wayne Klein as a receiver to take control of Winsome and U.S. Ventures and to "[m]anage and administer the assets of the Defendants." *Id.* at 125.

In November 2012, Mr. Penedo submitted a claim against the receivership estate for $4,418,000. He claimed that when signing the Refinery Agreement, he believed "that RIO intended to assign its rights and obligations . . . to Winsome, or that Winsome would otherwise be assuming RIO's obligation [to pay him], and that Winsome would actually be making the payments directly to [him]." *Id.* at 247. The receiver recommended to the district court that Mr. Penedo's claim be denied.

After discovery and an evidentiary hearing, the district court denied Mr. Penedo's claim.

DISCUSSION

## I. Appellate Jurisdiction

Under 28 U.S.C. § 1291, this court has jurisdiction over "all final decisions of the district courts of the United States." The Supreme Court has construed § 1291 as including review of a "small class" of interlocutory orders that "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Under this collateral-order doctrine, appellants "must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and (3) is effectively unreviewable on appeal from a final judgment." *W. Energy All. v. Salazar*, 709 F.3d 1040, 1049 (10th Cir. 2013) (internal quotation marks omitted).

In regard to the third factor, "an order is effectively unreviewable only where . . . the legal and practical value of" the asserted right "would be destroyed if it were not vindicated before" a final judgment. *Mesa Oil, Inc. v. United States*, 467 F.3d 1252, 1255 (10th Cir. 2006) (internal quotation marks omitted). Further, "we examine whether the entire category of rulings to which the claim belongs can be adequately vindicated on review of a final judgment or by other means, not whether the particular circumstances warrant review." *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1204-05 (10th Cir. 2013) (internal quotation marks omitted). "The decisive consideration in determining whether an order is effectively unreviewable is whether delaying review until the entry of final judgment would imperil a substantial

public interest or some particular value of a high order." *Miller v. Basic Research, LLC*, 750 F.3d 1173, 1177 (10th Cir. 2014) (internal quotation marks omitted).

Here, the requirements for collateral-order jurisdiction are satisfied. First, the district court's order denying Mr. Penedo's claim against the receivership estate conclusively determined the controversy between Mr. Penedo and the receiver. Second, the order denying Mr. Penedo's claim—which asserts that Winsome assumed RIO's obligation under the Refinery Agreement to pay Mr. Penedo—is completely separate from the merits of the CFTC's case against U.S. Ventures, Winsome, Andres, and Holloway for operating a commodity-futures Ponzi scheme. And third, an order denying a claim against receivership assets held in a CFTC civil-enforcement action will effectively be unreviewable on appeal from a final judgment. Specifically, a civil-enforcement action can result in both substantial civil penalties against the defendant(s) as well as restitutionary awards to victimized investors. *See* 7 U.S.C. § 13a-1(d)(1)(A) & (3)(A). Thus, when receivership assets are distributed as part of a final judgment, those assets will "likely [become] unrecoverable[ ] long before the action brought by the [CFTC] is subject to appellate review." *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001). "[I]nterlocutory review makes sense out of fairness to the [creditors of a CFTC defendant] and as a matter of judicial economy." *SEC v. Wealth Mgmt. LLC*, 628 F.3d 323, 331 (7th Cir. 2010).

We are not alone in applying the collateral-order doctrine in the context of receivership assets. The Fifth, Sixth, and Seventh Circuits agree that "the collateral-order doctrine permits interlocutory review of a district-court order

approving a receiver's plan of distribution." *Id.* at 330 (citing *Forex Asset Mgmt.*, 242 F.3d at 330-31, and *SEC v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 666-67 (6th Cir. 2001)).

The Ninth Circuit has taken a contrary view, however. It reasons that the merits of a civil-enforcement action are inseparable from an appellant's claim to assets held by the receiver because both affect "the pool of assets the receiver controls." *SEC v. Capital Consultants LLC*, 453 F.3d 1166, 1172 (9th Cir. 2006) (per curiam). Therefore, according to the Ninth Circuit, appellate jurisdiction fails under the second *Cohen* factor. We find the Ninth Circuit's reasoning unpersuasive, as it focuses only on the source of funds available to aggrieved parties and ignores "the merits of the case," *W. Energy Alliance*, 709 F.3d at 1049 (internal quotation marks omitted).

Accordingly, we conclude that this court has jurisdiction to review the district court's order denying Mr. Penedo's claim to receivership assets.

## II.  Mr. Penedo's Claim[1]

"It is generally recognized that the district court has broad powers and wide discretion to determine relief in an equity receivership." *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1194 (10th Cir. 2010) (internal quotation marks and ellipses omitted).

---

[1] Although we construe Mr. Penedo's pro se briefs liberally, we do not act as his advocate. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009).

6

Mr. Penedo argues that the district court abused its discretion in denying his claim because it "ignored evidence of verbal modifications and amendments to the Refinery Agreement that obligated Winsome . . . to pay [him] for his services." Aplt. Opening Br. at 2. This argument fails.

Under Utah's statute of frauds,[2] "every promise to answer for the debt, default, or miscarriage of another" must be "in writing, signed by the party to be charged with the agreement." Utah Code Ann. § 25-5-4(1)(b). An oral promise to pay another's debt is not covered by the statute of frauds, however, where the promise is an "original obligation of the promisor," such as "[w]here the promise, being for an antecedent obligation of another, is made . . . upon a consideration beneficial to the promisor." *Id.* § 25-5-6(3); *see also Healthcare Servs. Grp., Inc. v. Utah Dep't of Health*, 40 P.3d 591, 596 (Utah 2002) (stating that the statute of frauds does not apply "[i]f the predominant purpose of the promisor is to subserve or further his own interest rather than merely to underwrite the debt of another" (internal quotation marks omitted)). But Mr. Penedo has identified no evidence showing that Winsome received any benefit from allegedly assuming RIO's obligation to pay for his services. He merely states, without citing to the record, that Winsome "received reasonably equivalent value for the services [he] provided." Aplt. Opening Br. at 2. Arguments that lack citations to "parts of the record on which the appellant relies" are forfeited. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (internal quotation marks omitted).

---

[2] The parties agree that Utah law governs here.

7

Nor can Mr. Penedo invoke the part-performance exception to the statute of frauds. The "doctrine requires that the oral contract and its terms . . . be clear and definite and that . . . the acts done in reliance on the contract must be such that they would not have been performed had the contract not existed." *Wilberg v. Hyatt*, 285 P.3d 1249, 1253 (Utah App. 2012) (internal quotation marks omitted). Although Winsome did send money to Mr. Penedo, the terms of Winsome's alleged oral agreement to do so are anything but clear and definite.

Specifically, Mr. Penedo testified that in January 2007 he attended a meeting in which Ballard and Andres "proposed that Winsome [was] going to be responsible for [paying him based on] some source of agreement between both of them." Aple. Supp. App., Vol. II at 440. Mr. Penedo "assum[ed] that that agreement was a partnership agreement," *id.*, even though he had never seen such an agreement, *id.* at 441. Mr. Penedo's testimony may suggest a third-party beneficiary theory— which he does not advance on appeal— but his testimony does not specify any terms of an oral agreement. Moreover, Ballard testified that RIO was not affiliated with Winsome and that RIO did not assign to Winsome any obligations under the written Refinery Agreement. *Id.* at 513, 515. We conclude that Mr. Penedo has not identified "clear and convincing evidence" to support the part-performance exception to the statute of frauds, *Wilberg*, 285 P.3d at 1254.

Because Mr. Penedo's claim against Winsome's receivership assets was barred by the statute of frauds, the district court did not abuse its discretion in denying the claim.

8

## CONCLUSION

The district court's June 6, 2014 interlocutory order is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge